## COLLINS *v.* GRANTHAM.

Entries in a hymn book, proved to be in the handwriting of a parent, or made by direction of a parent, *ante litem motam*, in the form of a family record, are admissible in evidence to prove the age of a child, where the father and mother are dead, and the child has no near relative in the state.

*Friday,
June 10.*

APPEAL from the *Shelby* Circuit Court.

WORDEN, J.—Suit by *Grantham* against *Collins*, on a note, dated *January* 1, 1842. *Collins* pleaded infancy. Issue. Trial by the Court; finding and judgment for the plaintiff.

On the trial, the defendant produced an ancient looking book, destitute of covers, and from the title page, appearing to have been published in 1812, and containing the psalms and hymns of *Isaac Watts*, upon a blank leaf of which is written the following, viz.:

*Amos Collins*, born *February*, 31, 1789.

*Priscilla Swing*, born *April* 4, 1797.

*Amos Collins* and *Priscilla Swing*, married *March* 18, A. D. 1819.

*Sarah Jane Collins*, born *December* 31, 1819.

*Stephen Collins*, born *May* 14, 1821.

*Samuel Collins*, born *May* 1, 1823.

*Almira Collins*, born *May* 10, 1825.

And proved by *Edward Gird*, that said entries were in the handwriting of *Amos Collins* (the father of the defendant), who died in 1829. That shortly after the death of *Amos Collins, Priscilla Collins*, the mother of the defendant, at the late residence of the deceased, produced to him the said psalm and hymn book, and that at her request, he made on said blank leaf the following entries, viz.:

*Dewitt Collins* was born *July* 15, 1827.

*Amos Collins* was born *December* 18, 1829.

These last entries are in the handwriting of *Gird*, the witness. *Gird* also testified that the defendant has, older than himself, a sister named *Sarah Jane;* and, younger than himself, a brother named *Samuel*, a sister named *Almira*, and brothers named *Dewitt* and *Amos*, born in the order above named; that the mother of the defendant is dead; that his brothers and sisters reside out of this state; and that he has no uncle or other near relative, in the state, known to the witness. The witness, *Gird*, believes the entries named to be the family record of the father of defendant, though he was never so informed, and never saw it except on the occasion above stated.

This was all the evidence on the issue thus formed.

The Court received the book and the entries in it, and the testimony of *Gird*, reserving the question as to their admissibility for final decision. On the final decision, it was considered by the Court that the testimony thus of-

fered was inadmissible, and, therefore, the issue was found for the plaintiff.

Mr. *Greenleaf*, after stating the proposition that hearsay evidence, as it is sometimes termed, is admissible in matters of pedigree, says that "The term pedigree embraces not only descent and relationship, but also the facts of birth, marriage, and death, and the time when these events happened. These facts, therefore, may be proved in the manner above mentioned, in all cases where they occur incidentally and in relation to pedigree. Thus, an entry by a deceased parent, or other relative, made in a bible, family missal, or any other book, or in any document or paper, stating the fact and date of the birth, marriage, or death of a child or other relative, is regarded as the declaration of such parent or other relative, in a matter of pedigree." 1 Greenl. Ev., § 104.

In 1 Phil. Ev., p. 250 (ed. 1859), it is laid down that "Not only may relationship in general be proven by the hearsay of a family, but particular facts may also be proved, such as the ages of persons, dates of death or birth. There are several authorities for admitting hearsay as to dates. Thus, upon a question whether a testator, at the time of making his will, was of full age, a written memorandum by a deceased parent, stating the time of his birth, has been admitted to be good evidence. *Herbert* v. *Tuckal*, T. Raym. 84, is cited. This doctrine is fully recognized in *Roe d. Brune* v. *Rawlings*, 7 East. 290, where the Court say: "There are several instances in the books, where the declaration of a person having knowledge of a fact, and no interest to falsify it, has been admitted as evidence of it after his death. Thus, a written memorandum of a father, as to the time when his child was born, has been received to prove when the infant would come of age, and that he was in fact under age at the time of making his will."

In *Kidney* v. *Cockburn*, 2 Russ. and Mylne, 167, Lord BROUGHAM was of opinion, as were Justices PARK and LITTLEDALE, to whom the point was submitted, that statements contained in monumental inscriptions, and hearsay declarations made by a deceased relative, are competent

evidence to prove the respective ages of the persons to whom they refer, as well as the fact of their relationship to each other.

The case of *Higham* v. *Ridgway*, 10 East. 109, establishes the proposition that the time of birth, and consequently the age of a party, may be proven by hearsay, as well as any other matter of pedigree. There, an entry made by an *accoucheur* (since deceased) in a book, of having delivered a woman of a child on a certain day, referring to his ledger in which he made a charge for his attendance, which was marked paid, was held competent evidence as to the time of the child's birth, upon an issue as to his age at the time of his afterwards suffering a recovery. The evidence, in this case, was admitted on the ground that it was the declaration of a party against his interest, the entry alluded to showing that his charges were paid. But the case is, nevertheless, authority for the proposition that the time of a party's birth, and consequently his age, may be shown in a proper case, by testimony usually denominated hearsay.

If the fact sought to be shown in the case at bar, comes within the rule as to the admission of hearsay in matters of pedigree, and we think it does, the evidence appears to be admissible, and sufficient for the purpose for which it was intended. The entries are shown to have been in the handwriting of the father of the defendant, except those which were made subsequent to his death, by the witness, *Gird*, at the request of the mother. These entries show the birth of the father and mother, the date of their marriage, and the birth of their children, in the order in which the testimony of *Gird* shows them to have been born. From all the facts, it sufficiently appears that the paper offered was the family record of the father of the defendant; at all events, it furnished a sufficient declaration of the father as to the ages of his children, to be admissible under the authorities, as evidence. The entries are not obnoxious to the objection that they were made *post litem motam*. On the contrary, they were made long before any controversy arose, and before the note sued on was exe-

May Term, 1859.

cuted. They were made at a time when there was no apparent motive or inducement to misstate the facts or pervert the truth. The father and mother being both dead, and there being no near relatives of the defendant in the state, we are of opinion that the evidence was competent.

From this evidence, it appears that the defendant was born *May* 14, 1821, and had not reached his majority on the 1st of *January*, 1842, when the note was executed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for a new trial.

*M. M. Ray* and *T. A. McFarland*, for the appellant.