### JOHN T. VAN SICKLE v. WASHINGTON GIBSON.

*Kindred of the half blood—Depositions—Proof of relationship.*

One's half sister inherits from him equally with a sister of the full blood in lands which he obtained by purchase.

A deposition will not be set aside merely for being transmitted in a gummed envelope, if it has not been tampered with.

A deposition does not need a separate jurat if the commissioner who took it certifies that the deponent was duly sworn.

Interrogatories relating to family relationship, dates of decease, and marriages, may well be answered on the basis of family tradition instead of direct personal knowledge.

Error to Van Buren. Submitted November 21; 1878. Decided January 21, 1879.

EJECTMENT. The facts are in the opinion.

*George W. Lawton* for plaintiff in error. Relationship must be proved by evidence aside from the declarant's, *Plant v. Taylor,* 7 H. & N., 237; 1 Phil. Ev. [10th ed.], 275; *Hitchins v. Eardley,* L. R. 2 Pro. & Div., 248; *Blackburn v. Crawfords,* 3 Wall., 187; *Lea v. Polk Co.,* 21 How., 504.

*Lester A. Tabor,* for defendant in error. An oath is supposed to have been properly administered if a com-

missioner certifies that he administered it, *Williams v. Eldridge*, 1 Hill, 249.   General reputation in a family, as testified to by survivors, is admissible to show pedigree, *Doe v. Griffin*, 15 East, 293; *Jackson v. Browner*, 18 Johns., 37; 1 Greenl. Ev., § 103–5.

GRAVES, J.   In March, 1875, Gibson brought ejectment against Van Sickle for the west half of the southeast fractional quarter of section fourteen in the township of Porter in Van Buren county.   He was allowed to recover the entire premises in fee and Van Sickle alleges error.

Disregarding the objections made to Gibson's evidence and assuming the facts to be as stated on his side of the case, and it follows inevitably that he was not entitled to recover more than an undivided moiety of the lot and that the court erred in permitting a finding by the jury in his favor for the whole.

The showing on his part was: *first*, that James Young patented the land, and died seized January 6, 1851, without having married, and without father or mother living, but leaving Elizabeth Gibson, a legitimate half sister, and after her the children of Rebecca Young, a deceased sister, such children (in case of exclusion of Elizabeth Gibson, the half sister), being the only surviving next of kin of said James Young; *second*, a quit claim by these children.

Now, when James Young died an undivided half of the lot must according to these facts have fallen to his half sister Elizabeth Gibson (*Ryan v. Andrews*, 21 Mich., 229; *Rowley v. Stray*, 32 Mich., 70); and there is no claim that this interest has ever come to defendant in error.   He founds his right entirely upon the grant from Rebecca's children and attributes to them just the extent of interest they derived by heirship from their uncle, James Young.   Hence, according to the state and theory of the case on the part of defendant in error, the right which fell to Elizabeth Gibson is not in him, but is in some one else.

The deposition of Elizabeth Wilson, taken in Maryland by commission, was objected to, *first*, because it was transmitted in an envelope closed up and sealed with gum or paste in the way almost universally pursued at the present day, instead of being closed up under the commissioner's "seal;" and, *second*, because no jurat was attached to the deposition.

That the document came directly from the hand of the commissioner without the least interference, and precisely as it would have come in case the privy seal of the commissioner had been impressed on the envelope is not doubted, and it seems to the court that it would be a flagrant sacrifice of sense to form to reject the deposition on the sole ground that the commissioner followed modern usage instead of the ancient way.

When the regulation originated, the present method was unknown, and it was customary to use a privy or official seal on wax in order to secure the package and to betray the fact in case of having been tampered with, and no doubt it is better at present to follow the terms of the statute; but the spirit ought not to be blindly sacrificed to the letter, and where the package is carefully closed up and securely sealed according to modern practice, and there is no suspicion whatever that it has been tampered with, the proceeding ought not to be held void because the act of sealing was not done in the exact mode indicated by the words of the law. The provision simply relates to the means to be adopted to secure safe transmission of the paper after its departure from the commissioner, and does not touch the substance of the thing itself or any of its essential badges of verity or of authentication.

We have high authority for saying that if the clerk of the court had been the commissioner and had omitted to close the deposition up under his seal, the omission would have been disregarded. *Nelson v. Woodruff*, 1 Black, 156.

Where the end is certainly attained and the paper

has reached its destination without a question against its integrity, the bare fact that the closed up and well fastened envelope did not bear an impression of some seal of the commissioner is not enough to impair the proceeding.

It was not essential that the commissioner should attach a jurat to the deposition in the form customary in case of affidavits. He certified as the record informs us that the witness was sworn, and no more than one proper attestation of the fact was necessary.

The deposition is not set forth in the record, and we have nothing to guide us in regard to it beyond brief references in the bill of exceptions. The views expressed depend upon the construction which appears to be due to these references.

Certain answers given by the witness were excepted to as not responsive and as containing hearsay. The bill of exceptions is obscure, and it is difficult to determine what specific matters were aimed at by the objection or what line the exceptions were designed to draw between different items of the answers.

The objection does not seem to distinguish, but on the contrary to leave it for the court to ascertain what part was referred to as not responsive and what as hearsay. Looking at the case, however, in the light cast on it, we cannot say the answers were incompetent. The inquiry related to family connection and membership and to the decease and times of decease of members, and whether they had been or were married; and the answers returned, although in part based on the course of speech and understanding in the family instead of direct personal knowledge, would seem to have been proper in view of the nature of the subject. Wharton's Ev., Tit. Pedigree; Best, Wood's ed., § 498, and note *a* by the editor; 1 Greenleaf, §§ 103, 104, 134; 1 Starkie, Phil. ed., 45, 47, 188; Cow. & H., notes 560, 573, 612 to 626, 1147; *Jewell v. Jewell*, 1 How., 219.

Several questions connected with tax-sale deeds, and with the state of possession of the premises and its character, whether adverse or in common or otherwise have been mooted, but the record is not so constructed as to justify their examination. It would not be safe to attempt the formation of any settled opinion on those subjects.

The judgment must be reversed with costs, and a new trial granted.

The other Justices concurred.