## MUTUAL LIFE INSURANCE COMPANY OF NEW YORK v. J. A. BLODGETT.

### No. 182.

**1. Life Insurance Policy—Insurable Interest—Estoppel—Wagering Contract—Beneficiary as Trustee.**—Suit upon a policy of life insurance taken out by the insured upon her life in favor of her grandson. The policy recited that it was issued upon the application of the insured, and disclosed that the beneficiary named therein was her grandson. No fraud or deception was practiced by which the insurance company was deceived as to the real party to the contract. The note of the grandson was taken for the first premium, and the policy issued by the company with full knowledge of the relation of the parties, their respective interests and undertakings. *Held:*

1. The insurance company is estopped from denying that the policy speaks the truth as to the person who makes the application and with whom the contract of insurance was made.

2. The insured had an insurable interest in her own life, and had the right, as between herself and the company, when a policy was issued on her application, to name the person to whom the policy should be paid, regardless of insurable interest in her life being possessed by such person.

3. That the premium was paid by the beneficiary does not render the policy a wagering contract; nor does the fact that a beneficiary has no insurable interest in the life of an insured render the policy void as against public policy.

4. The courts will treat the person named as beneficiary, having no insurable interest, as a trustee appointed to collect the policy for the benefit of those legally entitled.

**2. Warranty—Statement as to Previous Sickness—Estoppel.**—When questions propounded by a medical examiner to an applicant for insurance are of a technical character, or of a nature which elicits the opinion of the applicant upon a matter which comes particularly within the knowledge of physicians, and the answer is dic-

tated by the physician to whom the company has committed the trust of making a medical examination after the facts are fairly and in good faith brought to his knowledge, the company should be bound by his act, and estopped from asserting the falsity of the answer.

3. Life Insurance Companies—Attorney's Fees and Damages.—Article 2953, Revised Statutes, allowing a recovery of attorney's fees and damages in certain cases against insurance companies, is constitutional.

4. Pedigree—Facts of Family History—Hearsay Evidence.—See opinion for declarations, both definite and relative, of the insured and members of her family as to her age, made prior to the application for insurance, held to be admissible to show her age in order to avoid the policy on the ground of misrepresentation in regard thereto. Such declarations, it is held, had a tendency to prove some fact of family history coming within the meaning of "pedigree."

APPEAL from Fannin. Tried below before Hon. E. D. McLELLAN.

*Fiset & Miller*, for appellant.—1. The beneficiary must have an insurable interest in the life of the insured, and it must affirmatively so appear in his pleadings. Burton v. Ins. Co., 119 Ind., 207; Ins. Co. v. Hogan, 80 Ill., 35, 38; Lyleton v. Ins. Co., 66 Mo., 63, 75; Freeman v. Ins. Co., 38 Barb., 247; Chrisman v. Ins. Co., 16 Ore., 283; Ins. Co. v. Ins. Co., 81 Ala., 328; Warnok v. Davis, 104 U. S., 775; Ins. Co. v. Bunch, 19 S. W. Rep., 25; Whitmore v. Ins. Co., 100 U. S., 36; Ins. Co. v. Hayard, 41 Ind., 116; Ins. Co. v. Hoyt, 9 N. W. Rep., 497; Brockaway v. Ins. Co., 9 Fed. Rep., 249; Ins. Co. v. Houghton, 13 Ins. L. J., 895.

2. The insured expressly warranted that her answers to questions 16, 17, and 18 were true as written down in her application, and she offered said answers as same appear in the application to the defendant as a consideration of the contract, and the policy issued upon said application contained a clause that no agent had power to modify the contract or to bind defendant by making any promise or by receiving any representation or information not contained in the application. Under these circumstances, plaintiff can not avoid the effect of false answers to said questions by showing the insured made such answers through inadvertence, mistake, or by advice of the medical examiner. Fitzmaurice v. Ins. Co., 84 Texas, 61; Ins. Co. v. Hutchins, 53 Texas, 62; Ins. Co. v. Coffee, 61 Texas, 287; Ins. Co. v. Willis, 70 Texas, 12; Wood on Ins., sec. 404; Sternnett v. Ins. Co., 68 Iowa, 674; Boggs v. Ins. Co., 30 Mo., 63; Flynn v. Ins. Co., 67 N. Y., 500; Ins. Co. v. Hazlewood, 75 Texas, 338; Ins. Co. v. Foundry, etc., 15 S. W. Rep., 34; Ins. Co. v. Blum, 76 Texas, 653; Ins. Co. v. Dyches, 56 Texas, 565; Bank v. Ins. Co., 62 Texas, 461; Cohen v. Ins. Co., 67 Texas, 325; Cooke on Life Ins., secs. 20–22; May on Ins., 3 ed., secs. 137, 144f, 144g; Ins. Co. v. Lacroix, 45 Texas, 158; Ins. Co. v. Lewis, 48 Texas, 622; Ins. Co. v. Lyons, 38 Texas, 253; Ins. Co. v. Jacobs, 56 Texas, 366; Ins. Co. v. Davidge, 51 Texas, 244; Ins. Co. v. Fletcher, 117 U. S., 519.

3. If Mrs. Downey made the application for insurance on her own life, but did so at plaintiff's request, and he was to pay the premiums

and to receive the policy, and plaintiff and Mrs. Downey confederated to procure the policy, and she did not owe plaintiff a sum reasonably proportioned to the insurance taken out, then the contract was a mere cover to enable plaintiff to speculate on her life, and was void. Ins. Co. v. Hazlewood, 75 Texas, 338; Ins. Co. v. Shaefer, 94 U. S., 460.

4. Facts of family history, such as births, marriages, and deaths, and the times when these events happened, may be proved by hearsay evidence. Primm v. Stewart, 7 Texas, 178; Campbell v. Wilson, 23 Texas, 252; North Brookfield v. Warren, 16 Gray, 171; Watson v. Brewster, 1 Pa. St., 381; Greenleaf v. Railway, 30 Iowa, 301; David v. Sittig, 1 Martin (U. S.), 147; same case, 14 Am. Dec., 179; Wilson v. Brownlee, 24 Ark., 586; Collins v. Grantham, 12 Ind., 440; Clements v. Hunt, 1 Jones' L. (N. C.), 400; Cherry v. The State, 68 Ala., 29; Hunt v. Ins. Co., 64 Mich., 671; Ins. Co. v. Rosenagle, 77 Pa. St., 507; Abb. Trial Ev., 90, et seq.; 1 Greenl. on Ev., secs. 103, 104; 1 Whart. on Ev., sec. 201, et seq.; Curtis v. Patton, 6 S. & R. (Pa.), 134; Railway v. Coggin, 73 Ga.; Morrill v. Foster, 33 N. H., 379; State v. Cain, 9 W. Va., 559; Hill v. Eldridge, 126 Mass., 234; Cheever v. Camden, 34 Mich., 296; Van Sickle v. Gibson, 40 Mich., 170; Arnes v. Middleton, 23 Barb., 571; Chapman v. Chapman, 2 Conn., 347.

*Lusk & Thurmond* and *Taylor & Galloway*, for appellee.—1. The policy of insurance was executed and delivered to appellee, showing the obligation of the company. It is only necessary to allege the execution of the same for valuable consideration, its breach, and a liability of the company. Wooters v. Railway, 54 Texas, 294; Van Norman v. Wheeler, 13 Texas, 316; Ins. Co. v. Dyches, 56 Texas, 565.

2. The amended petition with the exhibit shows the appellee had the right to institute this suit without reference to interest, and appellant could not question the right. Ins. Co. v. Hazlewood, 75 Texas, 338; Lewy v. Gillard, 76 Texas, 400; Goldbaum v. Blum, 79 Texas, 638.

3. The answers to questions 16, 17, and 18 contain the opinion of appellant, and she had a right to rely on the opinion of the company's medical examiner, who had knowledge on the subject about which she was questioned, and about which she was ignorant. Bliss on Ins., 2 ed., secs. 106–109; May on Ins., 3 ed., sec. 296; Holmes v. Ins. Co., 1 Wood, 674, 680; Hazlewood v. Ins. Co., 75 Texas, 338; Ins. Co. v. Chamberlain, 132 U. S., 304, 312; 22 S. W. Rep., 204.

4. A suit by a beneficiary in a life insurance policy, taken out by another for plaintiff's benefit for the amount of the policy, involves no question of pedigree, and in such cases hearsay testimony is not admissible. Ins. Co. v. Swinck, 94 U. S., 593.

5. The declarations of Anderson Downey as to the date of his birth, and that his wife was born some years thereafter, were not admissible in evidence, because the law does not permit hearsay evidence to prove a specific fact, collateral from which it is sought to infer some

other fact, however closely it is connected with the main subject of the investigation. 1 Rice on Ev., secs. 418, 419; Isenlord v. Clum, 126 N. Y., 552; Abb. Trial Ev., p. 91; Squires' Ev., sec. 582; Am. and Eng. Encyc. of Law, 257, 258.

FINLEY, ASSOCIATE JUSTICE.—This is a suit upon a life insurance policy, showing upon its face to have been taken out by Mrs. Lucinda J. Downey, upon her life, in favor of her grandson, J. A. Blodgett, the plaintiff in the court below. The defendant answered by exceptions, general and special, general denial, and special answer setting up a want of insurable interest in plaintiff, and breach of warranties on the part of the insured. The trial resulted in a verdict and judgment for plaintiff for amount of policy, attorney's fees, and 12 per cent damages. From this judgment the insurance company appealed, and assigned errors.

There are about twenty-five assignments of error, many of them bearing upon the same legal proposition, and it is not deemed necessary to consider the assignments as they are presented, but all the legal questions raised and considered of importance will be passed upon by this court.

It is urged by appellant that the policy is void, for the reason that the beneficiary named in the policy had no insurable interest in the life of the insured, and the policy was speculative and wagering on the part of plaintiff. The policy recited, that it was issued upon the application of Mrs. Lucinda J. Downey; J. A. Blodgett was named as the beneficiary, and his relation as grandson to the assured was therein disclosed. It is not shown that any fraud or deception was practiced upon the insurance company by which it was deceived as to the real party to the contract of insurance. It was proven that the beneficiary was to pay the premiums; this was known to the company; indeed, his note was taken for the first premium, and the policy was issued by the company with full knowledge of the facts as to the relation of the parties, and of their respective interests and undertakings under the contract. Under this state of facts, the company should not be permitted to deny that the policy speaks the truth as to the party who made the application, and with whom the contract of insurance was made.

Mrs. Downey had an insurable interest in her own life, and had the right, as between herself and the company, when a policy was issued on her application, to name the person to whom the policy should be paid, regardless of insurable interest in her life being possessed by such person. The fact that the premium was paid by the beneficiary does not give to the contract the character of a wagering contract; nor does the fact that the beneficiary has no insurable interest in the life of the assured render the policy void as against public policy. The courts will treat the person named as beneficiary, having no insurable interest, as a trustee appointed to collect the policy for the benefit of

those legally entitled, thereby enforcing the contract by which the company has solemnly bound itself, and at the same time conserving public policy by preventing the stranger from gambling on the life of his fellow, or profiting by his death. Ins. Co. v. Williams, 79 Texas, 633; Ins. Co. v. Hazlewood, 75 Texas, 351; Ins. Co. v. Baum, 29 Ind., 236; Langdon v. Ins. Co., 14 Fed. Rep., 272; Curtis v. Ins. Co., 27 Pac. Rep.; Mayer et al. v. Ins. Co., decided by this court at present term.

Under this view, the question whether the beneficiary had an insurable interest in the life of his grandmother, becomes abstract and its consideration unnecessary. So far as the insurance company's liability is concerned, it can not avoid the payment of the policy upon this ground.

The following portion of the court's charge is assigned as error, to wit: "In reply to question number 16 in the medical examiner's report, viz., 'Have you ever had any other serious illness, constitutional disease, or injury?' Mrs. Lucinda J. Downey answered, 'No;' and I therefore instruct you, that if you find said answer was untrue, and that she had prior thereto had a serious illness or constitutional disease, then, unless you find that defendant is estopped by the conduct of its medical examiner from denying the truth of said answer under following instructions, you will return a verdict for defendant. If you should find that about the month of February next prior to her making the application, Mrs. Lucinda J. Downey had an attack of 'la grippe,' and that the same was a serious illness, as claimed by the defendant; and if you should further find that Mrs. Downey, when said question number 16 was propounded to her by the defendant's medical examiner, Dr. A. B. Cox, was in doubt about how to answer the same, and stated thereby the facts or called his attention to facts already known to him in regard to said attack of 'la grippe;' and if you further find that said medical examiner, from her statement and his knowledge of the facts and circumstances in regard to said attack of 'la grippe,' advised her that said attack was not a serious illness as contemplated by said question, or that the proper answer to said question was 'No,' and that she answered 'No' upon such advice, honestly believing that to be the correct answer, then I instruct you that the defendant is estopped from denying the truth of her answer, and if such you find to be the case you can not find for defendant on the ground that said answer to said question number 16 was untrue, even though you should believe that, as a matter of fact, it was untrue."

Upon this assignment appellant predicates this proposition: "The insured expressly made her answer to the sixteenth question of the medical examiner's report a warranty, and she conditioned the contract on the absolute truth of this answer. If this answer was untrue in any respect, the contract was void; and this was so, even if she made the answer in good faith and upon the advice of defendant's agent, when the agent had no power to bind the defendant in the premises."

The application for the policy contained the following clause: "I also agree, that all the foregoing statements and answers, as well as those that I make or shall make to the company's medical examiner, in continuation of this application, are by me warranted to be true, and are offered to the company as a consideration of the contract." On the back of the policy is printed the following clause: "No agent has power on behalf of the company to make or modify this, or any contract of insurance, to extend the time for paying a premium, to bind the company by making any promise, or by receiving any representation as information not contained in the application for this policy." At the bottom of the medical examiner's report is the following: "I certify that my answers to foregoing questions are correctly recorded by the medical examiner." Which was signed by the applicant.

In 1 May on Insurance, section 296, page 600, it is said: "What one may call serious, another might not; and when there is no test furnished by the insurers by which the applicant can know what serious illness means, his failure to mention one which he does not regard as serious works no forfeiture of the policy, though in fact the illness not mentioned was a serious one. A serious illness must be one which permanently impairs the constitution and renders the risk more hazardous. So if the inquiry be as to the prior existence of disease having a tendency to shorten life, or rendering an assurance upon it more than usually hazardous. An honest belief in the truth of his answer is all that is required of the applicant. He may have had repeated attacks of disease, but if he does not know or have reason to believe that they come within the range of the inquiry, his failure to answer is immaterial, even though in point of fact they had a tendency to shorten life and increase the hazard of the risk." See also Mouler v. Ins. Co., 111 U. S., 339, 340; K. of P. v. Rosenfield, 22 S. W. Rep., 204; Bliss on Ins., sec. 106.

It is believed that when the questions propounded are of a technical character, or of a nature which elicits the opinion of the applicant upon a matter which comes peculiarly within the knowledge of physicians, and the answer is dictated by the physician to whom the company has committed the trust of making the medical examination, after the facts are fairly and in good faith brought to his knowledge, that the company should be bound by his act, and estopped from asserting the falsity of the answer. Ins. Co. v. Chamberlain, 132 U. S., 304; Hazlewood case, 75 Texas, 338; May on Ins., sec. 296.

The recovery of attorney's fees and 12 per cent damages is assigned as error; and it is urged that article 2953, Revised Statutes, is violative of our State Constitution and the Constitution of the United States, and therefore void. This contention has been settled against appellant by our Supreme Court in the case of Insurance Company v. Chowning, 86 Texas, 654, upon certified question from this court at the present term. Discussing the validity of that statute from every conceivable standpoint, the Supreme Court says:

"For appellant, it is claimed that article 2953, Revised Statutes, denies to the class of corporations embraced in its provisions the equal protection of the law, contrary to the prohibition contained in section 1 of the fourteenth amendment to the Constitution of the United States, and is therefore void. The reason assigned in support of this contention is, that all corporations engaged in the business of insurance are not embraced in the terms of the law; but it is not claimed that all corporations embraced in the classes named are not affected alike by its provisions. In 1891 the Legislature of this State enacted a law defining who are and who are not fellow-servants, which related only to employes of railroad companies. In Campbell v. Cook, 86 Texas, 630, decided by this court at its present term, that law was under consideration, with the same objection made to it, and based upon the same reasons as are here urged against the article of the statutes now in question, and this court held that the act was not liable to the objection, quoting Railway v. Mackey, 127 U. S., 209, as follows: 'When legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions.' Mining Co. v. Pennsylvania, 125 U. S., 189; Express Co. v. Seibert, 142 U. S., 353; Railway v. Gibbes, Id., 391; Electric Lines v. Squire, 145 U. S., 175. This rule is equally applicable to the defendant in this case and to the law under consideration. All persons of its class are treated alike under like conditions. The article of the statutes is not liable to the objection that it denies to appellant the equal protection of the law.

"Appellant's counsel assert that the article in question is in conflict with article 1, section 3, of the Constitution of the State of Texas, which is in these words: 'All free men when they form a social compact are entitled to equal rights, and no man nor set of men is entitled to exclusive separate public emoluments or privileges, but in consideration of public services.' It is not shown just how the law violates this section, and indeed it would be difficult to imagine how a corporation which has no natural rights could be said to be entitled to such rights and privileges as grow out of the formation of a social compact. It is the creature of law, and entitled to just such rights as the law grants to it. When granted, such rights are protected from invasion the same as the rights of any natural person.

"Section 13 reads as follows: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law.' The contention is, that the exacting of an attorney's fees in case judgment shall be recovered against the insurance company prevents the free resort to the courts. We are referred to Dillingham v. Putman, 14 Southwestern Reporter, 303, as authority for

this position; but that case was decided upon a different principle. That statute required receivers in all cases upon appeal to give bond for double the amount of the debt or judgment recovered. It was held, that as the receiver was but a fiduciary, this provision would in many cases prevent appeals altogether, and for that reason was void. In this case the party is not required to pay the fee or the damage as a condition precedent to making a defense, but only in case the defense is not maintained. The 12 per cent is given as damages for a failure to comply with the contract by payment, and the attorney's fees are allowed as compensation for the costs of collecting the debt.

"Section 19 is as follows: 'No citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, of in any manner disfranchised except by the due course of the law of the land.' Mr. Cooley, in his work on Constitutional Limitations, adopts as the best definition that given by Mr. Webster in the Darmouth College case, of the term due course of the law of the land, which is: 'By the law of the land, is most clearly intended the general law; a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial.' A law which is enacted by the Legislature in the exercise of its constitutional powers, and which affords a hearing before it condemns, and renders judgment after trial, is not in violation of this provision of the Constitution. The law in question gives to the persons coming within its provisions all of these safeguards, and is valid in that respect.

"Finally, it is said that this act is in violation of article 3, section 56, subdivision 16, as being a special law regulating practice in the courts. In the first place, it does not regulate the practice, except in so far as the awarding of costs may be considered. It is not a special law, because it applies to all cases that come under the provisions of the statute, and to all persons embraced in its terms. Dillingham v. Putman, supra.

"Appellant claims that the 12 per cent which the statute gives as damages for failure to pay when due, and the attorney's fees, are penalties for the breach of the contract, and that the Legislature has no authority to inflict penalties for the breach of private contracts. The attorney's fees are not given for the breach of contract; they can not be recovered except upon a failure to maintain the defense. No right to an attorney's fee attaches upon the failure to pay; it is cost given to reimburse the plaintiff for expenses incurred in enforcing the contract. If it be conceded that the 12 per cent is a penalty for a failure to pay when due, then the question arises, by what provision of our Constitution is such legislation forbidden, and who will determine as to when the public is so interested in the enforcement of contracts as to justify the Legislature in enforcing their performances by penalties? There is no clause of our State Constitution which expressly or by implication prohibits the act. But it is said, that the 'genius, the nature, and the spirit of our State government amounts to a prohibi-

tion of such acts, and the general principles of law and reason forbid them.' Durkee v. Janesville, 28 Wis., 464; Wilder v. Railway, 70 Mich., 385; State v. Goodwin, 18 W. Va., 179.   We are also referred to Railway v. Wilson, 19 Southwestern Reporter, 910, as sustaining this proposition.  That case rests upon a construction of article 10, section 2, of our Constitution, the correctness of which we are not called upon to determine, which was held to prohibit that character of legislation as to contracts between a railroad company and its employes. We do not understand the learned judge who delivered the opinion of the court in that case to assert the doctrine contended for.  It is sufficient to say, that the case is not in point as authority upon this question.  The powers of our State government are divided into three distinct departments, each of which is confided to a separate body of magistracy—the legislative functions to one, the executive to another, and the judicial to a third.  Each of these departments is expressly prohibited from exercising a power conferred upon either of the others. Const., art. 2.  Mr. Cooley, in his work on Constitutional Limitations, pages 154, 155, after treating of various limitations on the legislative power, says: 'Besides the limitations on legislative authority to which we have referred, others exist which do not call for special remark. Some of these are prescribed by the Constitution, but others spring from the very nature of free government.  The latter must depend for their enforcement upon legislative wisdom, discretion, and conscience. The Legislature is to make laws for the public good, and not for the benefit of individuals.   * * *   But what is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the Legislature must decide upon its own judgment, and in respect to which it is vested with large discretion which can not be controlled by courts except where its action is clearly evasive, and when under the pretense of lawful authority it has assumed to exercise one that is unlawful.  Where the power which is exercised is legislative in its character, the courts can enforce only those limitations which the Constitution impose, not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism, and sense of justice of their representatives.'   The State v. McCann, 21 Ohio St., 198; Queen Ins. Co. v. The State of Texas, 86 Texas, 250.

"The justice or injustice, good or bad policy of the law, was for the Legislature.  The article is not in conflict with the Constitution of the United States or of the State of Texas, and is valid."

Appellant also presents the following assignment of error: "The court erred in excluding the testimony of N. Simerell, set out in defendant's bill of exceptions number 1, because said evidence was legally admissible, and was not subject to the objections urged against it by the plaintiff."

"19.  The court erred in excluding the testimony of Mark Simerell and Mary A. Downey, set out in defendant's bill of exceptions number

6, because said evidence was legally admissible and not subject to the objections urged against it by plaintiffs."

These assignments are based upon the rulings of the court in refusing to admit the testimony, as appears from the following bills of exceptions:

"Be it remembered, that upon the trial of this cause defendant offered in evidence the deposition of Nancy Simerell, a daughter of Lucinda J. Downey, and that the answer to the twelfth interrogatory read as follows: 'My father was born on May 4, 1812.' To the seventh, as follows: 'He (my father) always told me that he was born on the 4th day of May, 1812. I think, too, I have seen it so stated in the family Bible, though I am not positive of that.' To the eighteenth, as follows: 'My mother was 18 years old when she married my father.' To the nineteenth, as follows: 'That (answer to eighteenth) is what she and my father always told me.' To the twentieth, as follows: 'My mother told me she was 20 years old when her first child (Frankie Ann) was born. She was married two years before its birth.' To the twenty-sixth, as follows: 'She (my mother) was born in 1814 or 1815, one; I am not sure.' To the twenty-eighth, as follows: 'She (my mother) was about 73 I think (when she died).' To the thirty-first, as follows: 'She (my mother) has often told me that she did not know the exact time of her birth; but she knew she was 18 when she married. She has told me that often. She has also often told me that she was 20 years old when my oldest sister was born. When any one would ask her her age she would tell them she was 20 years older than her oldest child, Frankie Ann, and tell them to count from her birthday.' To the thirty-second, as follows: 'She would always refuse to give her exact age, but would always give the difference between her age and my oldest sister's, and then tell one to calculate from that. I have often heard her give such replies to persons inquiring, up to February last (1890.) Then I once heard her when sick tell Dr. Nelson that she was 75 years old. I never heard her make any statement about her age after that.' To the thirty-sixth, as follows: 'She was sick in February, 1890. The doctor came to see her. She asked me what doctor. I told her Dr. Nelson. The first question he asked was, ' Grandma, how old are you?' I then heard her reply, 75 years old.' To the nineteenth (in second deposition), as follows: 'I was always taught there was between two and three years difference in my mother's and father's ages.'

"All the above testimony of the said witness was objected to by plaintiff as hearsay and excluded by the court, to which action the defendant excepted, and now here tenders this bill of exceptions, and asks that it be made a part of the record. Fiset & Miller, attorneys for defendant. Examined and allowed. E. D. McClellan, Judge. Indorsed: 'Should show that deposition disclosed that all the excluded testimony was hearsay.'

"Mrs. Elizabeth Holcombe testified, she was a daughter of Mrs. Lucinda J. Downey, and she had been married over eight years, and

that the family Bible and all other data of the kind were burned up when their home burned, before she was married. Mrs. Louvicey Anderson, in Tennessee, the insured's sister-in-law, testified, that Lucinda J. Downey did not keep a family record of the birth of their children. Perry Anderson, in North Carolina, testified he did not know the age of his sister, Lucinda J. Downey."

Sixth bill of exceptions: "Be it remembered, that on the trial of this cause, defendant offered in evidence the deposition of Mark Simerell, the son-in-law of Lucinda J. Downey, and the answer to the eighth interrogatory, which reads: 'Anderson Downey often told me and others present that he was born in 1812. I have seen his tombstone rock, and it says that year.' And the answer to the tenth interrogatory, as follows: 'I think they claimed (Mr. and Mrs. Downey) that there was about three years difference between them, and that Mr. Downey was the older.' Defendant also offered in evidence the deposition of Mary Alice Downey, daughter-in-law of Mrs. L. J. Downey, and the answer of said witness to the seventh interrogatory was: 'Anderson Downey was born in 1812. I heard him say so.' To the eleventh, as follows: 'The date of Anderson Downey's birth was on his tombstone. The date was 1812. I saw the tombstone last about five weeks ago.' To the thirteenth, as follows: 'Anderson Downey was two years the oldest (than Lucinda Downey); I have heard Anderson and Lucinda both say he was two years the oldest.' To the fourteenth, as follows: 'Lucinda Downey always told me she was 18 years old when she married.' To the twenty-third question, as follows: 'What was the general understanding among Mrs. Downey's children as to her age? State fully how you know this.' And answer, as follows: 'All of them counted her age as 75 at her next birthday; I have heard them talking of it.' To the twenty-sixth, as follows: 'Mrs. Downey was 20 years old when her first child was born. She always told me that was her age.' Plaintiff objected to all of the above testimony as hearsay, and the court excluded same, whereupon defendant excepted, and now here tenders this bill of exceptions, and asks that it be considered as a part of the record of this case. Fiset & Miller, attorneys for defendant. Examined and allowed. E. D. McClellan, Judge. Indorsed: 'Deposition disclosed that all witness knew was hearsay.' "

This evidence was offered in support of appellant's pleaded defense, that the insured answered falsely as to the date of her birth, and as to her age at the time of making the application. As appears from the record, the declarations offered to be proven were made before the application for the policy, and if true, would show that the insured was older by several years than she stated she was in the application. As appears from the bills of exceptions, the parties making the declarations were dead; the parents of the insured kept no family record; and there appears to have been no positive evidence within the reach of appellant which could be offered in proof of the facts sought to be

established. This evidence, it appears, was rejected by the trial court upon the ground that the evidence was hearsay; and the action of the court is supported upon the proposition that *pedigree* was not in issue in the case, and that such evidence can legally be admitted only where heirship or succession is in issue. The early English authorities appear to support this proposition, so far as we can determine from citations in the text books and digests. We have not access to the English authorities. While this is true, the weight of American authority is not in accord with this view of the subject. "The term *pedigree*, however, embraces not only descent and relationship, but also the fact of birth, marriage, death, and the times when these events happened. These facts, therefore, may be proved in the manner above mentioned in all cases where they occur incidentally and in relation to pedigree." 1 Greenl. on Ev., sec. 104.

In Abbott's Trial Evidence, section 34, page 91, in treating of this character of evidence, the author says: "For the present purposes, I use the term *facts of family history* instead of *pedigree*, as conveniently characteristic of the American rule, which admits certain hearsay evidence of such facts for any legitimate purpose within the scope of this chapter, whether directly involved in the issue or not, and does not restrict its use, as it seems the English rule does, to cases where it is offered for a geneological purpose; that is, to make out one link in a chain of pedigree." This author, as has many adjudicated cases in the American courts, announces that this character of evidence is admissible in any case where the fact sought to be proved by it is in issue; that it is not confined to geneological issues. Our Texas courts have not disapproved this view, but rather seem to be in line with it. In Primm v. Stewart, 76 Texas, 181, it is said: "Nor is the admissibility of such evidence confined, as has been insisted, to cases where the question is one of pedigree. It seems to have been allowed, irrespective of that question, and in cases where the inquiry was entirely abstracted from any question of pedigree."

Generally, as to this character of evidence, see also Yates v. Houston, 3 Texas, 433; Campbell v. Wilson, 23 Texas, 252; Webb v. Richardson, 47 Texas, 465; Boon v. Miller, 33 Texas, 564; Howard v. Russell, 75 Texas, 176.

It is also objected to some of this evidence that it is relative in its character, and not direct and positive as to the main fact sought to be established—namely, the age of the insured. In Abbott's Trial Evidence, under the head of "What Facts are Within the Rule," section 35, it is said: "The facts of family history which may be proved by hearsay from proper sources are the following: birth, living or survival; marriage, issue or want of issue; death; the times, either *definite or relative*, of these facts; relative age, seniority," etc. The declarations against which this objection is urged had a tendency to prove some fact of family history coming within the meaning of the term "pedigree," which bore a legitimate relation in the evidence to the main

fact sought to be established—the age of the insured—and should not have been rejected upon this theory. This character of evidence is necessarily in most instances of doubtful reliability, but this goes to the weight or value of the testimony, and not to its admissibility. It does not become inadmissible because it is hearsay upon hearsay, provided all the declarations are within the family. As to the value or weight to be given such evidence, the language of Lord Langdale, M. R., is appropriate. He says: "In cases where the whole evidence is traditionary, when it consists entirely of family reputation, or of statements of declarations made by persons who died long ago, it must be taken with such allowances, and also with such suspicions as ought reasonably to be attached to it. When family reputation or declarations of kindred made in a family are the subject of evidence, and the reputation is of long standing or of old date, the memory as to the source of the reputation, or as to the persons who made the declarations, can rarely be characterized by perfect accuracy. What is true may become blended with, and scarcely distinguishable from, something that is erroneous; the detection of error in any part of the statement necessarily throws doubt upon the whole statement, and yet all that is material to the cause may be perfectly true, and if the whole be rejected as false because error in some part is proved, the greatest injustice may be done," etc. See 1 Greenl. on Ev., note under sec. 104.

It would be interesting to review the two lines of authority upon this subject; but our facilities in the way of books are quite limited, and the number of cases in this court pressing for consideration does not admit of the expenditure of more time in the preparation of opinions than is absolutely necessary to express the decision of this court upon the points raised. The counsel in this case upon both sides have prepared able and thorough briefs and arguments, and it would afford us much pleasure—and we would feel it our duty—to discuss the subject more at length, but for the considerations named.

In support of the admissibility of the evidence appellant's counsel cites numerous cases, to only a few of which we have access. We give appellant's citation of authorities upon the proposition: North Brookfield v. Warren, 16 Gray, 171; Watson v. Brewster, 1 Pa. St., 381; Greenleaf v. Railway, 30 Iowa, 301; David v. Sittig, 1 Martin, N. S., 147 (La.); same case, 14 Am. Dec., 179; Wilson v. Brownlee, 24 Ark., 586; Collins v. Grantham, 12 Ind., 440; Clements v. Hunt, 1 Jones' L. (N. C.), 400; Cherry v. State, 68 Ala., 29; Hunt v. Ins. Co., 64 Mich., 671; Ins. Co. v. Rosenagle, 77 Pa. St., 507; Abbott's Trial Ev., p. 90, et seq.; 1 Greenl. on Ev., secs. 103, 104; 1 Whart. on Ev., sec. 201, et seq.; Curtis v. Patton, 6 S. & R. (Pa.), 134; Railway v. Coggin, 73 Ga.; Morrill v. Foster, 33 N. H., 379; The State v. Cain, 9 W. Va., 559; Hill v. Eldridge, 126 Mass., 234; Cheever v. Congden, 34 Mich., 296. See also Van Sickle v. Gibson, 40 Mich., 170; Arnes v. Middleton, 23 Barb., 571.

We are of the opinion that the court erred in refusing to admit the evidence set out in the bills of exceptions herein above set out. We have found no other error of material importance. For the error above named, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 20, 1894.