Partition. J. J. Ewell died seized of the tract of land in question, and plaintiff alleges that Charles Ewell and his brother, Walter Ewell, are his sons and consequently were tenants in common of the land as his sole heirs. Defendant denies this allegation, and avers that Charles Ewell was not the legitimate child of J. J. Ewell, although the two, Walter and Charles, were of the same mother, the wife of (235) said Ewell. That J. J. Ewell and his wife had separated before Charles Ewell was begotten, and continued to live apart until his birth, and during the entire period of separation the wife lived in adultery with one Dr. Best, who is the father of Charles Ewell, he having taken the name of his mother. The following is the substance of the testimony.
The defendant's testimony tended to show these facts: J. J. Ewell lived separate and apart from his wife; he spent his time in Martin County; his wife was unfaithful to him; she was intimate with other men, and she had been heard to say that Charles Ewell was not the son of her husband; another man recognized Charles as his son, made presents to him, called him son, and Charles called the other man "daddy."
The plaintiff's testimony tended to show these facts: J. J. Ewell did not live separate and apart from his wife; while it was true he spent much of his time in Martin County, he left his neighborhood in Pitt County because he was charged with committing some criminal offense for which he feared he might be arrested; he had opportunity of access to his wife; he spent some of his time in the neighborhood in which she lived; he had been seen at the house in which she lived about the time that Charles must have been begotten; he made shingles in a swamp within a mile of his wife; he sent to her provisions for her support; he employed a midwife for his wife when Charles was born and paid the fees. The plaintiff also introduced testimony tending to show that Charles was born about the time fixed in the family record, and defendant's testimony tended to show that he was born at a different time.
Upon the issue of paternity it appears therefore that there was conflicting evidence, and it was submitted to the jury to find the fact as to the legitimacy of Charles Ewell, the court instructing the jury that *Page 190 
there is a presumption of legitimacy, Charles having been born during the marriage of the Ewells, and placing the burden upon the defendant to rebut it by showing impotency or nonaccess. The plaintiff Parmelia Ewell is the child of Charles Ewell, who is dead, and claims his interest from him as his heir. The defendant M. M. Ewell claims under (236) Walter Ewell. The jury returned a verdict in favor of the plaintiff, and defendant M. M. Ewell appealed.
The case turns upon the legitimacy of Charles Ewell. According to the established rule, when a child is born in wedlock it is presumed in law to be legitimate, and by the ancient common law this presumption could not be rebutted if the husband was capable of procreation and was within the four seas during the period of gestation; but this doctrine was exploded in the case of Pendrell v. Pendrell, 2 Str., 925, and gave way to the modern doctrine that the presumption may be rebutted by any competent and relevant evidence tending to satisfy the jury that sexual intercourse did not take place at any time when by the laws of nature the husband could have been the father of the child. Boykin v. Boykin, 70 N.C. 262; S. v. McDowell,101 N.C. 734; 2 Greenleaf on Evidence, 130, 131; S. v. Pettaway 10 N.C. 623;Rhyne v. Hoffman, 59 N.C. 335; Woodward v. Blue, 107 N.C. 407; S.v. Liles, 134 N.C. 735; Banbury Peerage Case (H. of Lords), 1, Simm and Stuart, 153; 5 Cyc., 626.
Our cases have stated the present rule in somewhat different language, but they substantially agree as to its terms and scope, as will be seen from the following extracts:
"When a child is born in wedlock, the law presumes it to be legitimate, and unless born under such circumstances as to show that the husband could not have begotten it, this presumption is conclusive; but the presumption may be rebutted by the facts and circumstances which show that the husband could not have been the father, as he was impotent or could not have had access." S. v. McDowell, supra (opinion by Davis, J.).
In another case the Court said: "The child was begotten while the parties were man and wife, but was not born until six months after the husband had obtained a divorce a vinculo matrimonii on account of adultery. During the time when the child was begotten the husband (237) and wife lived separately, but in the same neighborhood, near enough for the husband to visit her, and it is proved that, occasionally he did go to the house where she was staying. There was, then, an opportunity for sexual intercourse between the parties, and *Page 191 
from that the law presumes that, in fact, there was sexual intercourse between them. This plaintiff must, therefore, be taken to be legitimate, unless it be proven by irresistible evidence that the husband was impotent or did not have any sexual intercourse with his wife; but the former is not pretended, and the latter is a fact which neither the wife nor the declarations of the wife is admissible to prove. Rex v. Luffe, 8 East, 193. Here, independent of the declarations of the wife, which must be rejected as incompetent, there is testimony sufficient to rebut the presumption of access. Such being the case, the proof that the plaintiff's mother lived in adultery with a man who testified that he was the father of her children, makes no difference. As was said in the case of Morris v. Davis, 14 Eng. C. L., 275, `It matters not that the general camp, pioneers and all, had tested her sweet body, because the law fixes the child to be the child of the husband.'" Rhyne v. Hoffman, supra (opinion by Battle, J.).
More recently this Court said: "Formerly a child born of a married woman was conclusively presumed to be legitimate, but now legitimacy or illegitimacy is an issue of fact resting upon proof of the impotency or nonaccess of the husband. This is true even when the child is begotten as well as born in wedlock. For a stronger reason, this is true when, as in this case, the child was begotten four or five months before the marriage, and the jury believed the evidence that the husband had no intercourse with the prosecutrix prior to the marriage." S. v. Liles, supra (opinion byClark, C. J.).
"The question of the legitimacy or illegitimacy of the child of a married woman is one of fact, resting on decided proof as to the nonaccess of the husband, and the facts must generally be left to the jury for determination." 2 Kent Com., 210. See, also, Schouler Dom. Rel., sec. 225;Hargrave v. Hargrave, 9 Beavan, 552.
The rule as to the presumption of legitimacy in respect to a (238) child born in lawful wedlock was strongly stated by the Supreme Court of the United States in two of the celebrated Gaines cases, in which the question was often considered and discussed. The Court held that access between man and wife is always presumed until otherwise plainly proved, and nothing is allowed to impugn the legitimacy of a child short of proof by facts showing it to be impossible that the husband could have been its father. Gaines v. Hennon, 65 U.S. 533;Patterson v. Gaines, 47 U.S. 550. Those cases were described by Mr.Justice Wayne, in concluding the opinion in the last case of this long protracted litigation, as the most remarkable in the records of the Court. What is therein said, therefore, is entitled to great respect and should have great weight, and it does not materially differ from the rule as formerly settled by this Court. *Page 192 
We conclude that the judge was right in leaving the matter to the jury, as an open question of fact, with a correct instruction as to the presumptions of the law and a proper caution as to how to deal with the evidence.
There are two questions of evidence which require our notice. The plaintiff offered to introduce a copy of the entry in the family bible of the Ewells showing the birth of Charles Ewell and its date. If age, time, and place of birth and death are not in themselves questions of pedigree or genealogy, they may be connected therewith in such way as to render declarations concerning them admissible. They may be material circumstances from which an inference may fairly be drawn as to a person's paternity, as, for example, whether A. is the son of B., and any one of them alone may have this force as proof. McKelvey on Evidence, p. 219. In such case, declarations of deceased members of the family are competent to show the fact in issue. 1 Greenleaf on Evidence (16 Ed.), sec. 114b; McKelvey on Evident, supra. The declarations may be oral or written, such as entries in the family bible or other family register or record. Clements v. Hunt, 46 N.C. 400; 16 Cyc., 1234, and cases in notes 89 and 90; Lewis v. Marshall, 5 Peters (U.S.), 470. "The date of a birth and death of an individual, (239) being matter of pedigree, may be proved by hearsay evidence and general repute in his family, and an entry of a deceased parent, made in a bible, is regarded as a declaration of the parent making the entry, and therefore admissible. 1 Greenleaf on Ev., sec. 104; Phil. Ev. (Cow. Hill's and Edw. notes), 249-252 and notes." Greenleaf v. R. R.,30 Iowa 303. But entries in family bibles or other family records are not the only source from which we may legally obtain this kind of proof. Hearsay, or, as it is generally termed, reputation, is admissible in all questions of pedigree. And the phrase "pedigree" embraces not only descent and relationship, but also the facts of birth, marriage, and death, and the times when these events happened. The entry of a deceased parent, or other relative, made in a bible, family missal, or any other book, or document, or paper, stating the fact and date of the birth, marriage, or death, of a child or relative, is regarded as the declaration of such parent or relative in a matter of pedigree. Correspondence of deceased members of the family, recitals in family deeds, descriptions in wills, and other solemn acts are original evidence, where the oral declarations of the parties are admissible. Inscriptions on tombstones and other funeral monuments, engravings on rings, inscriptions on family portraits, charts of pedigree, and the like, are also admissible as original evidence of the same facts. 1 Greenleaf on Evidence (16 Ed.), sec. 114d; Kelley'sHeirs v. Maguire, 15 Ark., at pages 604 and 605; Jones on Evidence (2 Ed.), sec. 316; Berkley Peerage case, 4 Campbell, 401, 418; Jacksonv. Cooley, 8 Johns., 128, 131. *Page 193 
The following cases sustain and illustrate the rule and the variety of forms which the proof may take: East v. Martin, 19 N.H. 152; Collinsv. Grantham, 12 Ind. 440; Whitcher v. McLaughlin, 115 Mass. 167;North Brookfield v. Warren, 19 Mass. 171; Ins. Co. v. Wilkinson,53 Ga. 535; Jones v. Jones, 45 Md. 144; Chamberlain v. Chamberlain,71 N. Y., 423; Wren v. Howland, 75 N.C. 894 (which is like our case in respect to the fact offered to be proven and the mode of proof). The original entry being competent, an authentic copy of it, when the original has been lost or destroyed, must also be. We presume that the judge found as a fact that the original was lost; the copy, (240) therefore, was admissible as secondary evidence, for the general rule applies, 1 Greenleaf Ev., 16 Ed., sec. 563q; Whitcher v. McLaughlin,115 Mass. 167. The entry must have been made by a deceased person or recognized by the family and the record brought from the proper custody. Jones on Ev. (3 Ed.), secs. 312, 315. These requirements seem to have been observed in this case. The testimony of Emily Ewell as to the manner in which Charles Ewell, her husband, made the copy which was offered in evidence, from the family bible, is not very satisfactory. She does not say that the copy is a perfect, or even a true one, but we cannot say there is not sufficient evidence to sustain the finding that the copy is a correct transcript of the original. The court gave the defendant another chance as to this matter by submitting it to the jury and instructing them that they must find that the paper contained a true copy of the entry before using it as evidence upon the question of the legitimacy of Charles Ewell. There can be no doubt of the relevancy of the evidence to prove this fact. The copy, therefore, was properly admissible.
The plaintiff also proposed to prove that there had been a parol partition of the land between the defendants M. M. Ewell and Charles Ewell, for the purpose of showing that Charles Ewell had been recognized as the legitimate heir of J. J. Ewell, and we do not see why it was not competent for this purpose, as an admission or recognition by defendant of this fact, or conduct on his part from which the jury might infer the legitimacy, at least in connection with the other facts and circumstances. Jones on Ev. (3 Ed)., sec. 315, p. 397. The plaintiff did not rely on the partition as valid and proof of her title to one-half of the land, but solely for the purpose first stated. The evidence was properly admitted.
We find no error in the case, after careful examination.
No error.
Cited: West v. Redmond, 171 N.C. 744; Hall v. Fleming, 174 N.C. 170. *Page 194 
(241)