LULU E. KRAUS, Respondent, v. SAMUEL KRAUS, Appellant.

Kansas City Court of Appeals, February 16, 1903.

1. Divorce: PATERNITY OF CHILD: EVIDENCE. On a petition to modify a decree of divorce regarding the support of a child, evidence relating to the paternity of the child is reviewed and the finding of the lower court that the child was the progeny of the parties and not a foundling, is held sustained.

2. ———: ———: PLEADING. In a cross-bill in a divorce case, the husband alleged the birth of the child, describing it, and asked for the care and custody thereof. On an application some two years thereafter to modify the allowance to the mother for the support of the child, to whose care it had been adjudged, the defendant is bound by such allegation, since if he had such suspicions he ought to have stated them in his pleading and he can not now stultify himself by denying the allegations of his cross-bill.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

AFFIRMED.

*Beardsley, Gregory & Kirshner* for appellant.

Submitted argument.

*S. S. Gunlack* for respondent.

Submitted argument.

BROADDUS, J.—This suit is on a petition to modify a decree rendered by the circuit court on the 13th day of January, 1899, wherein the same adjudged the care and custody of an infant male child, then twenty-two months old, to the mother, Lulu E. Kraus, said child having been born during the marriage relations between plaintiff and defendant, and awarding that defendant pay to plaintiff on the first day of each month the sum of fifteen dollars to be used for the care and keeping of said child, said payments to continue until it reaches the age of six years, if it should live so long and remain in the care and custody of plaintiff, at which time the court might make such further order affecting the maintenance of said child as shall then be deemed right.   The grounds of the petition are that said child is neither the progeny of the plaintiff nor that of the defendant; and that plaintiff fraudulently at the time of its supposed birth imposed said child upon defendant as that of her own, when in fact it was a foundling of unknown parentage.   The defendant complied with the order of court and made the monthly payments for the care and custody of the child until the month of March, 1901, at which time he claims he learned that it was not born of the wedlock between himself and the plaintiff when he discontinued such payments.

One of the principal witnesses was one Amelie Bethman who stated that about the 2nd day of March, 1897, she went to defendant's residence in Kansas City, Missouri, at which time she saw the plaintiff and a Miss Ritter, a hired girl.   Plaintiff then told her that she (plaintiff) must have a baby, as her husband thought she was pregnant; that she had padded herself with cotton to lead him to so believe; and that as her husband did not treat her well, she thought if she could

get a child he would treat her better. Said witness further testified that she looked about a week without finding a child to suit her; that after having had a talk with Miss Ritter, the servant girl, she went to a certain house on East Twelfth street to see about a baby there, and from thence she went to plaintiff and told her how the baby looked, whereupon plaintiff gave her a cape and a shawl; that she then went and got the baby from the Twelfth street house, placed it under the cape and carried it to the plaintiff and put it in a bed; that plaintiff then went to bed; that the woman from whom she got the baby was a midwife; that at about four o'clock p. m. defendant came home and saw the child; that she came regularly in the morning for nine days to look after the baby, during which time plaintiff was up and around the house; that the child appeared to be four or five days old when she first saw it; and that she as a midwife reported the birth of the child as that of plaintiff and defendant. One Emma Hayden, also a midwife, testified that she was the person who furnished a young baby to the said Bethman in 1897 from her house in Kansas City, at which place she was living.

Mary Ritter, the house girl named, testified that she went at plaintiff's request to Mrs. Bethman for the purpose of obtaining an infant and made an appointment for a meeting between them; that she was not present at such meeting but that Mrs. Kraus told her that the Bethman woman had promised to bring her a baby soon; that at this time plaintiff began to make preparations to deceive her husband and make him believe she was with child; that in about two weeks thereafter Mrs. Bethman brought the child in question; that after the child appeared and at about three o'clock p. m. of the same day, at plaintiff's request she went to a grocery store and telephoned defendant to come home; that he came shortly thereafter and asked witness how she got Mrs. Bethman so quick, whereupon plaintiff had spoken up and said: "I had Val stop a

carriage which was passing along the street at the time, and I sent the carriage for her;'' and that defendant spoke and acted in such a way that she was convinced that he firmly believed the child to be his own and insisted on having the family physician come to see his wife that night or the next morning. She further testified that Mrs. Kraus was up and around assisting in the house work with her nightdress on, and when any one came she went to bed; that in the meantime she kept the doors locked and the blinds drawn. Dr. Rodgers, the family physician, was called and testified that he visited plaintiff professionally on the 20th of January and in December preceding the date of the supposed birth of the child, but he had no recollection of such visits having any reference to plaintiff's pregnancy. Defendant testified that he was never at any time satisfied that the child was his progeny and that prior to its supposed birth he had not noticed that his wife was pregnant; that he and plaintiff were divorced in 1899 and that in February, 1901, he married another woman, at about which time he began a search for evidence to confirm the suspicions he entertained that the child was a foundling, resulting in his locating the hired girl, Miss Ritter, and the two midwives.

On the other hand, the plaintiff testified that she was the mother of the child and the defendant its father, her testimony being confirmed by that of her mother and other women friends, as follows:

Mrs. Margaret Frame, who had known plaintiff for many years, testified that in the fall of 1896 plaintiff was sick, throwing up her victuals, as women sometimes do in cases of pregnancy, and that she called her attention to her symptoms and that plaintiff then admitted she was pregnant; that she constantly visited her and that she was getting heavy and fleshy. Mariah Ellis testified that she had known Mrs. Kraus for ten years or more; that in the fall of 1896 she noticed that plaintiff was sick at the stomach, at which time she ac-

cused her of being in a state of pregnancy; that she saw her off and on during the winter and that her condition indicated pregnancy; that she saw her in January, 1897, and she was very large; that in seven or eight days thereafter she saw her again when she was employed in making baby clothes. Mary Gowdy, plaintiff's mother, who was living at Cameron, Missouri, testified that she saw plaintiff in September of 1896; that she stayed all night with her and that they slept in the same bed; that plaintiff was sick at the time and pregnant; that in October, following, she was at plaintiff's home again and that she saw her again in January while she was in a bath tub, and that she could see that she was pregnant.

The pleadings in the original divorce suit were in evidence and the answer and crossbill of defendant alleged amongst other things that the child in controversy was born of the marriage relationship, and that plaintiff was not a suitable person to have it in care and custody and defendant asked that it be turned over to him.

We have given only a general outline of the testimony in the case, but we think sufficient for the purposes thereof. The court overruled defendant's application and he has appealed to this court, insisting that the evidence clearly showed that the child was not the offspring of the plaintiff and defendant.

It is obvious that more or less perjury was committed at the trial, because the evidence of witnesses on both sides could not be true, and that of one or the other must therefore be false. The duty of passing upon the credibility of the witnesses was a matter for the trial court, especially of those for the plaintiff who were present and testified in person. The positive testimony of the witnesses for the respective sides did not greatly preponderate either one way or the other, but the circumstances taken into consideration amply sustains the finding of the court. One of the most remarkable of these circumstances was that the defendant living in

the same house with his wife could have been so easily imposed upon as he claims he was as to the paternity of the child. We can readily see that where the husband is away from home for months previous to the supposed birth of a child to his wife he might be deceived, and that a spurious infant, under such circumstances, might be imposed upon him as that of his own and of his wife. But it is incredible that where, as in this case, the husband is living in the same house with the wife, though not cohabiting with her, but seeing her daily for months prior and up to the very date when a child is presented to him as just then born, that he would not know it was an imposition. Common sense and experience is altogether at variance with such a conclusion. It is not to be believed for a moment that defendant, not having any previous knowledge of the condition of the wife, would not, as was shown here, have said or done something to indicate his surprise at the happening of such an unlooked for event. Instead, he seemed pleased at the result and expressed no suspicion because of the unlooked-for arrival of the infant. And if the evidence of the women friends of the plaintiff, whose reputations seem to have been good, is to receive credence, the evidence of the hired girl, Ritter, can not be true that plaintiff only began her preparations to deceive her husband a few days prior to the supposed birth of the child, for they state she was making baby clothes as early as August and September previous, at which times she appeared to be and showed the usual symptoms of pregnancy.

But aside from all this, there is one fact that must be controlling: the defendant in his said cross-bill and answer to the divorce suit used the following language: "Defendant further says that there was born during the time of the existence of the marriage relationship between plaintiff and defendant, to the plaintiff a child, a boy now about twenty months old," of which he asks the care and custody. If he entertained the suspicions

he now says he did, he should have made them known; but having failed to do so, he ought not to be heard at this late date to stultify himself by denying what he most solemnly asseverated in his said cross-bill. To stigmatize the mother and to deprive the child of its birthright are matters of the gravest importance and should not be done, except upon clear and unequivocal testimony and of such force as to leave no reasonable doubt.

For the reasons given we affirm the finding and judgment of the trial court. All concur.