[L. A. No. 4968.    Department One.—October 26, 1917.]

In the Matter of the Estate of CORNELIUS WALKER, Deceased; MABEL E. WALKER, Guardian of the Estates of Edwin N. Walker and E. Earl Walker, Minors, Appellant.

ESTATES OF DECEASED PERSONS — EXECUTORS AND ADMINISTRATORS — DISTRIBUTION OF ESTATE — CONTEST — PARTIES.—An administrator of an estate, as such, has no interest in a controversy to determine rights of inheritance.

ID.—DISTRIBUTION — PARTIES .TO CONTEST — ADMINISTRATOR AS PARTY IN INDIVIDUAL CAPACITY.—Where, however, an administratrix filed a petition for distribution to herself in her individual capacity, alleging that she is the sole heir, and her heirship (though not sole heirship) is admitted by a counter-petition, filed by a guardian for minors, who claim to be children and heirs of the deceased, and the case was tried upon the theory that the administratrix had appeared in her individual capacity, contesting the right of the minors to inherit, she was ,deemed to have waived the objection that she was not a party interested.

ID.—APPEAL—UNPREJUDICIAL ERROR.—In such case the minors, who claimed the right to inherit, could not be prejudiced by the irregularity, which, in case of a new trial, could be corrected.

ID.—HUSBAND AND WIFE—DISSOLUTION OF MARRIAGE—INTERLOCUTORY DECREE—DEATH BEFORE TIME FOR FINAL DECREE.—Where, in an action for divorce, an interlocutory decree was rendered in favor of the husband, and the latter died before the time for final decree, the marriage relation existing between them was not dissolved by the interlocutory decree, but by the death of the husband.

ID.—PARENT AND CHILD—LEGITIMACY OF CHILDREN.—Under section 194 of the Civil Code, providing that all children of a woman who has been married, born within ten months after the dissolution of the marriage, are presumed to be legitimate children of that marriage, where an interlocutory decree of divorce had been entered in favor of a husband, who died thereafter and before the time for final decree, twin children of the surviving wife born within ten months after the death of the husband, are presumed to be the children of the deceased husband.

ID.—PRESUMPTION OF LEGITIMACY OF CHILDREN — REBUTTAL OF THAT PRESUMPTION.—The presumption that when a woman has been married her children born within ten months after dissolution of marriage are children of that marriage may be rebutted by evidence showing that the husband was incompetent, or entirely absent, so as to have no intercourse or communication of any kind with the mother, or absent at the period during which the child or children must in the course of nature have been begotten, or only present under such circumstances as afford clear proof that there was no sexual intercourse.

ID.—LEGITIMACY OF CHILDREN — EVIDENCE — APPEAL — OBJECTIONS TO EVIDENCE RENDERED IMMATERIAL BY INSTRUCTIONS.—Where the jury, in a contest of the heirship of children, was instructed that the evidence was insufficient to justify a finding that the husband of the mother was impotent or that he was entirely absent, so as to preclude intercourse or communication with the mother, or that he was absent at the period during which the children must have been begotten, and that the sole question for the jury to pass upon was whether his presence and meetings with his wife on the occasion of conceded visits were under circumstances which clearly established that no sexual intercourse was had between them, an appellate court, in reviewing alleged errors, is not concerned with evidence, even though incompetent, which tended to prove the impotency of the husband, or his absence to an extent that precluded intercourse or communication, or that he was absent at the period during which the child must have been conceived, unless it also bears upon the question submitted to the jury that he was present only under circumstances that afforded proof that there was no sexual intercourse.

ID.—EVIDENCE—BURDEN OF PROOF OF NONACCESS OF THE HUSBAND.— One who insists on the illegitimacy of a child born in wedlock must prove nonaccess of the husband by evidence other than the fact that he and his wife did not live together, or even that she was living with another. Where the communication between husband and wife was such as to have afforded opportunity for sexual intercourse, whatever probabilities exist, no evidence can be admitted to show that any other than the husband was the father or probably the father of the wife's child.

ID.—EVIDENCE—INADMISSIBILITY OF PROOF OF BIRTH OF PRIOR ILLEGITIMATE CHILD.—The admission of evidence that about five months before the date of an interlocutory decree of divorce, the wife gave birth to an illegitimate child, and that the husband knew that fact, was erroneous, even though offered only as a circumstance tending to show the destruction of the love and affection of the husband for the wife and, *as a consequence,* the absence of sexual intercourse between them on the occasion of subsequent conceded meetings. All evidence with reference to the paternity of a prior illegitimate child and that another than the husband was its father was inadmissible and its admission prejudicial.

ID.—EVIDENCE — INTERLOCUTORY DECREE OF DIVORCE ADMISSIBLE.—In a contest of the heirship of children, an interlocutory decree of divorce between the mother of the children and her deceased husband was admissible for the purpose of negativing the presumption under subdivision 5 of section 1962 of the Code of Civil Procedure, that the issue of a wife cohabiting with her husband, who is not impotent, is legitimate, the decree being a judicial determination that at the time the children were begotten the wife was not cohabiting with the husband, that is, dwelling with him as his wife; and also, for the purpose of tending to show the improbability of their indulging in an act which, in the absence of a reconciliation, must be deemed essentially immoral.

ID.—INSTRUCTIONS — INTERLOCUTORY DECREE OF DIVORCE — PRESUMPTION OF LEGITIMACY.—An instruction that the presumption of intercourse between husband and wife after an interlocutory decree of divorce is not nearly so strong as before the entry of such decree, and that where an interlocutory decree' is obtained on the ground of desertion, that fact decreases somewhat the presumption of legitimacy declared by sections 193 and 194 of the Civil Code, was erroneous, it being the province of the jury alone to determine, under all the circumstances, what weight should be accorded to the fact that at the time the children were begotten an interlocutory decree of divorce had been granted.

ID.—EVIDENCE—DECLARATIONS AND MUTUAL CONDUCT OF HUSBAND AND WIFE.—It was not error to admit evidence of the conduct of the husband and wife toward each other and of their declarations connected with such conduct, objections going more to the weight than to the competency of the testimony.

APPEAL from an order of the Superior Court of Los Angeles County settling account and decree of distribution and from an order denying a new trial.    Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Schmidt & Riggins, for Appellant.

Geo. M. Harker, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—This proceeding grows out of the following facts: On July 3, 1913, upon the ground of desertion, Cornelius Walker obtained an interlocutory decree of divorce from his wife, Mabel E. Walker. He died on November 20, 1913, leaving an estate of which Mabel A. Nason, a daughter by a former wife, was appointed administratrix.    On April 11, 1914, Mabel E. Walker gave birth to twin sons, Earl and Edwin, whose legitimacy as lawful heirs of deceased constitutes the subject of this controversy.

On March 29, 1915, Mabel A. Nason, as *"petitioner and administratrix,"* filed her first and final account, accompanied by a petition wherein she alleged that she was the sole heir of deceased, to whom she asked that the estate be distributed.    In due time Mabel E. Walker, as guardian of her said minor sons, filed a counter-petition alleging that they were children of deceased and who, with Mabel A. Nason, constituted the only heirs to whom the estate should be distributed.    Mabel A. Nason, *as administratrix,* answered this counter-petition, denying all the material allegations thereof other than that she was an heir of deceased.    Thereafter, on May 27, 1915, Mabel A. Nason, *as administratrix,* served notice that she would demand a jury to try the issues, as provided by section 1717 of the Code of Civil Procedure, and that on June 1, 1915, the administratrix would move the court to settle the issues to be tried.    When the case was called for trial on December 9, 1915, Mabel E. Walker waived a jury trial and for the first time made an objection to the participation of anyone in the proceeding other than herself, "on the ground that said minors by their guardian are the only persons interested in this proceeding," which objection was overruled and a trial was had before a jury, which rendered a verdict finding that said minors were not the children of

deceased. Thereupon the court made its order settling the account and distributing the entire estate to Mabel A. Nason, from which, and an order denying her motion for a new trial and other orders incident to the settlement of said estate in accordance therewith, Mabel E. Walker, as guardian of said minors, prosecutes this appeal.

The first contention made by appellant is that Mabel A. Nason, in her capacity as administratrix, had no interest in the proceedings, and therefore no authority to participate in the trial or demand the impaneling of a jury to try the issues. In support thereof several authorities are cited to the effect that an administrator of an estate has no interest in a controversy to determine rights of inheritance, he being a mere officer of the court holding the estate as a stakeholder, to be delivered in accordance with the order of distribution made by the court. Undoubtedly this is true. (*Roach* v. *Coffey*, 73 Cal. 281, [14 Pac. 840] ; *Estate of Healy*, 137 Cal. 474, [70 Pac. 455] ; *Estate of Murphy*, 145 Cal. 464, [78 Pac. 960].) Nevertheless the rule is not applicable to the facts disclosed by the record in this case. It clearly appears therefrom that Mabel A. Nason, in filing her petition, appeared before the court not only as administratrix, but in her individual capacity, alleging that she was the sole heir of deceased. Her petition, as an individual, for distribution of the estate to her as the sole and only heir of deceased was filed prior to the appearance in the proceedings of Mabel E. Walker as guardian of the minors. Her position as an heir was clearly set forth therein, which fact as pleaded was by counter-petition recognized and admitted by the guardian of the minors and reiterated in the answer filed by the administratrix. It further appears that Mabel A. Nason personally paid the costs of the proceedings charged to her in defense against the claims of the said minors and bore the expense of hiring counsel therein. Up to the time of calling the case for trial, her right as an heir to wage the contest was recognized not only by the guardian, but as well by the court. Appellant made no objection whatsoever to the fact that she appeared as administratrix or in a dual capacity, until after issue of heirship was joined and the impaneling of a jury called to try the same on December 9, 1915, at which time her counsel, in language, if not misleading, at least not calculated to acquaint the court or opposing counsel with the

grounds thereof, made the objection, as shown by a colloquy between the court and counsel for appellant, as follows: Counsel: "At this time we wish to interpose another objection and an objection is made to anyone participating in this proceeding other than Mabel E. Walker, on the ground that said minors by their guardian are the only persons interested in this proceeding." The Court: "Overruled. . . . I cannot understand counsel's position. The petition here is by Mabel A. Nason and she alleges that she is the sole heir. You allege that the two children mentioned in your petition are the children of the deceased and admit that the administratrix is a child of the deceased and entitled to inherit. How can there be any question about her interest?" To which counsel for appellant replied: "We do not believe there is anyone interested in this case excepting the minors." The Court: "How could that possibly be?" To which inquiry counsel for appellant made no response, but stipulated that the objection might be considered throughout the whole case. The case was tried upon the theory that Mabel A. Nason had appeared in her personal capacity as an heir of said deceased, contesting the right of the minors to inherit. Not only should appellant, under these circumstances, be deemed to have waived the objection now urged, but, since throughout the proceedings the case was tried as a contest waged by Mabel A. Nason as a conceded heir of deceased contesting the rights of the minors to inherit, the latter could not possibly be prejudiced by reason of such irregularity, which, in case of a new trial and upon the court being made acquainted with the condition of the record, it will no doubt order corrected.

A number of errors are predicated upon rulings of the court in admitting evidence the prejudicial effect of which, it is claimed, was greatly accentuated by instructions given to the jury. At the time of the death of deceased, Mabel E. Walker, mother of the minors, was, and for a number of years prior thereto had been, his wife, though they had not lived together as man and wife for a period of some four years. Excepting for a short time when the husband lived at Santa Monica, they, having separate abodes, resided in the city of Los Angeles, where during all the time the husband was engaged in business. On November 8, 1911, a property settlement was had between them, and on January 10, 1912, the wife brought suit for divorce on the ground of the hus-

band's desertion. This action, however, was dismissed, and thereafter, on April 8, 1913, the husband instituted suit for divorce, alleging that his wife had deserted him since December, 1911. In this action the wife made default and an interlocutory decree was granted July 3, 1913, and thereafter on April 11th the twin sons were born.

Section 194 of the Civil Code provides that "all children of a woman who has been married, born within ten months after the dissolution of the marriage, are presumed to be legitimate children of that marriage." The marriage relation existing between the husband and wife was not dissolved by the interlocutory decree of divorce, but by the death of the husband on November 20, 1913. (*Estate of Dargie,* 162 Cal. 51, [121 Pac. 320]; *Brown* v. *Brown,* 170 Cal. 1, [147 Pac. 1168]; *Olson* v. *Superior Court,* 175 Cal. 250, [165 Pac. 706].) Hence the children, having been born within ten months succeeding his death, are, under the provisions of said section 194, presumed to be his sons. This presumption, however, as stated in *Hargrave* v. *Hargrave,* 9 Beav. 552, may be rebutted and overcome "by proper and sufficient evidence showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse." (*Estate of Mills,* 137 Cal. 304, [92 Am. St. Rep. 175, 70 Pac. 91].) The court instructed the jury that the evidence adduced was insufficient to justify a finding that Cornelius Walker was impotent, or that he was entirely absent, so as to have no intercourse or communication with the mother, or that he was entirely absent at the period during which the children must, in the course of nature, have been begotten; and told the jury that the sole question for it to pass upon in determining the issue was whether the presence of Cornelius Walker upon the occasion of conceded visits made upon and meetings with his wife were under circumstances which clearly established the fact that no sexual intercourse was had between them. Hence the jury must be deemed to have considered the evidence adduced only in so far as it bore upon the question thus submitted for its determination. Therefore, in reviewing the alleged errors, we are

not concerned with evidence, even though incompetent, which tended to prove the incompetency of the husband, or his absence from the wife to an extent that he could have no intercourse or communication of any kind with her, or absent at the period during which the child must, in the course of nature, have been begotten, unless it also bears upon the question submitted to the jury, namely, that he was only present under such circumstances as afford proof that there was no sexual intercourse  In the consideration of such question, Lord Langsdale, in *Hargrave* v. *Hargrave, supra,* said: "It is, however, very difficult to conclude against the legitimacy in cases where there is no disability and where some society or communication is continued between husband and wife during the time in question, so as to have afforded opportunities for sexual intercourse; and in cases where such opportunities have occurred and in which any one of two or more men may have been the father, whatever probabilities may exist, no evidence can be admitted to show that any man other than the husband may have been or probably was the father of the wife's child." (See *Phillips* v. *Allen,* 2 Allen (Mass.), 453; *Cross* v. *Cross,* 3 Paige (N. Y.), 139, [23 Am. Dec. 778].)

Not only is the record barren of any evidence tending to show that Cornelius Walker did not, during the period while living separate and apart from his wife, have physical access in the sense of opportunity for intercourse with her, but it, without contradiction, shows that he did at numerous times call upon her at her residence (ostensibly on business), on which occasions (and particularly at about the time when these children were begotten) the wife, without objection, testified they indulged in the procreative act. That he was not impotent, and during the period covering the time when the children were begotten he had access to his wife, by which is meant opportunity for intercourse (*Cope* v. *Cope,* 1 Moore & R. 275; *Bury* v. *Philpot,* 2 Mylne & K. 349), cannot upon this record be questioned. In the *Banbury Peerage Case,* 1 Sim. & S. 159, it was said "that after proof given of access (opportunity) of the husband and wife, by which, according to the laws of nature, he might be the father of a child, no evidence can be received except to deny that such intercourse had taken place." In *Van Aernam* v. *Van Aernam,* 1 Barb. Ch. (N. Y.) 375, it is said that the mere fact that the wife is living as the mistress of another, the husband not making any

effort to break up such relation, is not sufficient evidence
from which nonaccess of the husband can be presumed, thus
bastardizing the issue. To the same effect is *Phillips* v.
*Allen,* 2 Allen (Mass.), 453. In other words, the party in-
sisting upon the illegitimacy of one born in wedlock must
prove nonaccess of the husband by evidence other than the
fact that he and his wife did not live together, or even that
she was living with another, since, having access and being
competent, even though another had like opportunity and
might be the father, the law in determining the question will
not permit the indulgence in probabilities, but presumes
"that he is the father whom the nuptials show to be so."
This "is the foundation of every man's birth and status,
. . . the cornerstone and very foundation on which rests the
whole fabric of human society; and if you allow it once to
be shaken, there is no saying what consequences may follow."
(*Routledge* v. *Carruthers,* Nicol. Adult. Bast. 161.) In
*Powell* v. *State,* 84 Ohio St. 165, [6 L. R. A. (N. S.) 255, 95
N. E. 660], it is said: "Public policy requires that the status
of a child born or begotten in lawful wedlock should be fixed
and certain, and the immediate exigencies, or even the ap-
parent justice, of any particular case, will not justify a de-
parture from the rule so necessary and salutary to the best
interests of society. The law is not willing that a child
shall be declared a bastard to suit the whim or purpose of
either parent, nor upon evidence merely that no actual act of
intercourse occurred between husband and wife at or about
the time the wife became pregnant. The proof must be such
as to show the impossibility of access, and this evidence not
only fails to prove that, but, on the contrary, does show that
access was a physical possibility at all of the time from the
date that she claims there was a final separation up until
the time the divorce was granted. . . . Before such a child
can be adjudged a bastard, the proof must be clear, certain,
and conclusive, either that the husband had no powers of
procreation, or the circumstances were such as to render it
impossible that he could be the father of the child." To the
same effect are *Dennison* v. *Page,* 29 Pa. St. 420, [72 Am.
Dec. 644]; *Kraus* v. *Kraus,* 98 Mo. App. 427, [72 S. W. 130];
*Orthwein* v. *Thomas,* 127 Ill. 554, [11 Am. St. Rep. 159, 4
L. R. A. 434, 21 N. E. 430]; *Egbert* v. *Greenwalt,* 44 Mich.
245, [38 Am. Rep. 260, 6 N. W. 654]; *Ewell* v. *Ewell,* 163

N. C. 236, [Ann. Cas. 1915B, 373, 79 S. E. 509.]    As said in *Hargrave* v. *Hargrave*, 9 Beav. 552, where the communication between husband and wife was such as to have afforded opportunity for sexual intercourse, whatever probabilities exist, no evidence can be admitted to show that any man other than the husband may have been or probably was the father of the wife's child.

Now, bearing in mind the existence of the marriage, the fact that the husband was competent and that he concededly had access in the sense of opportunity for sexual intercourse with the wife, we come to a consideration of the evidence received and which the jury concluded sufficient to overcome the presumption declared in section 194 of the Civil Code, to the effect that such children are presumed to be legitimate children of the marriage.

Over appellant's strenuous objection, much evidence was introduced with reference to the birth, paternity, and death of a child born to Mabel E. Walker in February, 1913, the illegitimacy of which and Walker's knowledge thereof the evidence tended to prove and concerning which the court, among other things contained in a lengthy oral charge covering some twenty-one pages of printed matter, instructed the jury that the legitimacy or illegitimacy of such child was not involved in the controversy, except as such fact might incidentally throw light upon the relations of the husband and wife, the probability of love and affection between them, and the probability of acts of sexual intercourse occurring between them subsequent to that time; that such evidence bore upon the question of the innocence of the mother of the minors which, since it was a civil case, might be overcome by a preponderance of the evidence; and that such ''evidence with regard to the legitimacy of the child born February 1, 1913, . . . was admitted for the purpose of overcoming, so far as it might justly have that weight in your mind, the presumption of the innocence of the mother.''    It thus appears that this line of testimony was received upon two theories: First, that if the illegitimacy of the child born February 1st was established, it was a circumstance tending to controvert the presumption arising from conceded access and prove there was no act of sexual intercourse had between husband and wife, as testified to by her, on occasions when he subsequently met and visited her, and particularly at about the

time when claimants were conceived. 'In other words, such fact was calculated to destroy his love and affection for her, · in the absence of which no intercourse was had. It cannot be said that an act of intercourse between husband and wife (opportunity therefor being shown) depends upon the existence of conventional love and affection, although it does depend upon opportunity and inclination of the parties at the time to join in the procreative act. Access of the husband to the wife at about the time when the minors were begotten, thus affording opportunity, is conclusively shown; and assuming that the wife gave birth to an illegitimate child on February 1, 1913, such fact was not admissible as a circumstance tending to prove that the husband did not thereafter at the time when these minors were begotten, he having access to his wife, have sexual intercourse with her. In *Estate of Gird,* 157 Cal. 534, [137 Am. St. Rep. 131, 108 Pac. 499], it is said: ''The authorities are practically in accord to the effect that evidence tending to show unchaste conduct of the alleged mother with other men is allowable only in so far as it has a bearing upon the question of the paternity of the child—in so far as it tends to show that another is or may be the father of the child, and hence that it must be directed to a time at or about the time the child was begotten.'' See, also, *Sabins* v. *Jones,* 119 Mass. 167, where it is held that ''evidence of acts of intercourse with other men twelve months before the birth is inadmissible.'' Hence it follows that if such evidence was sufficient to overcome the presumption of the mother's innocence on the earlier occasion, and did convince the jury that she was guilty of an adulterous act, the fruit of which was the child born in February, 1913, such fact was not a circumstance tending to show there was no act of intercourse between the husband and wife at the time these minors were begotten, and their status, under the presumption declared in section 194 of the Civil Code, is unaffected thereby. In our opinion, all evidence with reference to the paternity and death of the child born February 1, 1913, and that tending to prove that A. B. was the father thereof, was inadmissible and the prejudicial effect of such error accentuated by the instruction of the court thereon.

Although the status of the children, since not parties to the action for divorce, was unaffected by the interlocutory decree (*Kleinert* v. *Ehlers,* 38 Pa. St. 349; *Shuman* v. *Shuman,* 83

Wis. 250, [53 N. W. 455], such decree was admissible in evidence, first, for the purpose of negativing the provisions of subdivision 5 of section 1962 of the Code of Civil Procedure, that "the issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate." While the interlocutory decree did not affect the relations of husband and wife (*Estate of Dargie,* 162 Cal. 51, [121 Pac. 320]), it was a judicial determination that the wife was not at the time the children were begotten cohabiting with her husband; that is, dwelling with him as his wife. (*Taylor* v. *Taylor,* 10 Colo. App. 303, [50 Pac. 1049]; *Robinson* v. *Robinson,* 188 Ill. 371, [58 N. E. 906].) Second: It was likewise admissible as tending to establish a relationship from which, depending upon other circumstances established and evidence of the disposition and character of the parties, the jury might fairly draw the inference that, notwithstanding opportunity therefor, intercourse was not had on the occasions when the husband visited the wife. Standing alone, it might have little weight, while considered with other facts it might be of probative value as tending at least to show the improbability of parties occupying such relation indulging in an act which, though not affecting the legitimacy of the children, must in the absence of a reconciliation of the parties, which the law contemplates may take place (*Olson* v. *Superior Court,* 175 Cal. 250, [165 Pac. 706]), be deemed essentially immoral.

While in our opinion the interlocutory decree was admissible in evidence, the court erred in its instruction to the jury that "the law, then, is that the presumption of intercourse between husband and wife after the date of a divorce by an interlocutory decree, is not nearly so strong as the presumption that such intercourse occurred before the entry of such decree." The jury were further told, with reference to the effect, as evidence, of the decree and judgment-roll in the divorce action, that while such decree does not destroy the presumption declared in sections 193 and 194 of the Civil Code, "you are entitled, however, in weighing the evidence in this case, to consider the fact that where a divorce is obtained on the ground of desertion, that that fact decreases somewhat, and you are to judge to what extent, the weight of the presumption of legitimacy." The effect of thus instruct-

ing the jury was to tell them that after the granting of such decree the presumption declared by sections 193 and 194 of the Civil Code should not have full force and effect, but must be deemed of less weight and effect than in cases where no interlocutory decree had been granted. In other words, that where such decree was granted, less evidence was required to overcome the presumption than would be required in the absence of such decree, notwithstanding proof of facts upon which the decree might have been granted. We do not so understand the law. The effect of an interlocutory decree of divorce upon the ground of desertion is but a judicial declaration of such desertion, which fact in a case of this nature might be otherwise established; and since the marriage relation, notwithstanding such decree, continues, how can it be said, as a matter of law, that the presumption is of less weight—requiring less evidence to overcome it—in the one case than in the other? In such cases the law declares the presumption and it is the province of the jury alone to determine under all the circumstances what weight in overcoming the same should be accorded the fact that at the time the children were begotten an interlocutory decree of divorce had been granted. Under the instructions the jury might well have concluded that, instead of the deduction which the law directs to be made from existing wedlock (sec. 193, Civ. Code, and sec. 1959, Code Civ. Proc.), very little weight should be attached to such fact. In our opinion, it was prejudicial error to give these instructions.

The objection that the court erred in permitting evidence of the conduct of Walker and his wife toward each other and of declarations connected with such conduct goes more to the weight thereof than to its competency. While it might, where access of the husband and wife is shown, be entitled to very little weight in determining the question, nevertheless, under the authority of *Baker* v. *Baker*, 13 Cal. 87, and *Wright* v. *Hicks*, 12 Ga. 155, [56 Am. Dec. 451], we cannot say that such evidence was erroneously admitted.

Aside from the erroneous instructions referred to, the lengthy oral charge contains much matter that could serve no purpose other than to confuse in the minds of the jurors the real issue submitted to them, which, as stated, was whether the husband on conceded visits to and meetings with his wife

was "only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse."

The judgment and orders appealed from are reversed.

Sloss, J., and Shaw, J., concurred.

Hearing in Bank denied.