[No. 22775.   Department One.   May 7, 1931.]

J. S. PILAND, *as Administrator, Respondent,* v. YAKIMA
MOTOR COACH COMPANY *et al., Appellants.*[1]

*Reynolds, Ballinger, Hutson & Boldt* and *Snively &
Bounds,* for appellants.

*Harcourt M. Taylor,* for respondent.

PARKER, J.—The plaintiff, Piland, as administrator
of the estate of his deceased brother, James G. Piland,
seeks recovery of damages from the defendants, Yaki-
ma Motor Coach Company and United Pacific Cas-

[1]Reported in 298 Pac. 419.

ualty Insurance Company as surety, upon its public carrier liability bond, for the death of James G. Piland, caused, as it is claimed, by the negligent driving of one of its passenger motor stages.

A trial upon the merits in the superior court for Yakima county, sitting without a jury, resulted in findings and judgment awarding to the administrator recovery against the defendant motor coach company in the sum of $8,134; that is, for the benefit of the widow and daughter of Piland for his death, $7,000; for the benefit of Piland's estate for the destruction of his automobile, $500; for medical and hospital services rendered to Piland during the few hours between the time of his injury until his death, $56; and for his funeral and burial expenses, $578. Judgment was also rendered against the insurance company, as surety upon the public carrier liability bond of the Yakima Motor Coach Company, for $5,000; that is, the insurance company was adjudged liable to the extent of $5,000 upon the judgment award against the motor coach company. From this disposition of the case in the superior court, both defendants have appealed to this court.

At the time of the accident in question, resulting in the death of Piland, he and Mrs. Piland were husband and wife, and had been married for a period of about nineteen years. They had one child only, a daughter about eighteen years old. On that day, Mrs. Piland was, by the superior court for Yakima county, in an action pending in that court wherein she was plaintiff and he was defendant, duly awarded an interlocutory order, adjudicating her to be entitled to a decree of divorce from him on the ground of his abandonment of her, entitling her to a final decree of divorce from him upon the expiration of six months from that date, as provided by § 988-1, Rem. Comp. Stat. The inter-

458

locutory order adjudicated her right to alimony as follows:

"And it is hereby further ordered and adjudged: That the plaintiff be and she is hereby awarded of and from said defendant the sum of Twelve Dollars and Fifty Cents ($12.50) per week, payable in advance on Monday, of each and every week hereafter, continuously, during the life of said plaintiff to cease in event of her remarriage, . . ."

Thereafter, on the same day, there occurred the accident in question, resulting in Piland's death. He was then driving his Studebaker car northerly along the easterly side of the state paved highway between Toppenish and Yakima. At the same time, a Ford car was being driven southerly along the westerly side of the pavement. At the same time, one of the passenger stages of the motor coach company was being driven southerly along the westerly side of the pavement, following the Ford car some distance behind it. At some considerable distance ahead of the Ford car, there was being driven southerly along the westerly side of the pavement a vehicle drawn by horses, moving along somewhat rapidly for a horse-drawn vehicle, though considerably more slowly than the Ford car was moving. The pavement was twenty feet wide and furnished ample space upon its surface for the passing of vehicles going in opposite directions. The Ford car was being driven at from thirty-five to forty miles per hour, but not at an excessive or unlawful rate of speed along that portion of the highway.

The Ford car, upon approaching near the horse-drawn vehicle, slowed down to approximately twenty miles per hour. The stage, which had been up to that time running at approximately forty miles per hour, slowed down in some degree, and its driver attempted to pass the Ford car by turning to its left. The driver

of the stage, then realizing that the Ford car could not be passed by the stage without its coming into collision with Piland's car approaching from the opposite direction, attempted to turn back onto the westerly side of the pavement, when the stage came into contact with the Ford car, causing it to be thrown into the ditch on the westerly side of the pavement. That collision seemingly caused the stage to glance to the left, or possibly its driver suddenly turned it to the left, causing it to come directly into collision, almost head-on, with Piland's car, throwing Piland's car into the ditch on the easterly side of the pavement and damaging it practically to the extent of complete destruction, and so injuring Piland that he died in a hospital a few hours thereafter.

We do not understand it to be seriously contended that the evidence does not show the negligence of the driver of the stage to be at least a contributing proximate cause of the accident. Indeed, we see but little room for so contending. It is, however, contended that Piland's negligence was such an efficient, contributing, proximate cause of the accident as to absolve the motor coach company from liability therefor. We think it cannot be so decided. One argument is that the speed at which Piland was driving his car was unlawful and excessive. We do not think that the evidence so shows. Indeed, we fail to see how the trial court could have viewed the speed of Piland's car, under the evidence, other than well within the lawful speed limit.

Besides, it seems to us that in no event did the speed of Piland's car constitute a contributing cause to the accident. It was being driven well easterly of the center line of the pavement so as not in the least to interfere with the proper driving of vehicles in the opposite direction southerly along the westerly side of

the pavement. Another argument is that the level dirt shoulder, three and one-half feet wide immediately adjoining the pavement on the easterly side, afforded Piland an opportunity to turn to his right partially onto the level shoulder, and thus avoid being struck by the stage. The suddenness with which the accident occurred, manifestly without warning to Piland, seems to us to answer this argument. Besides, the situation strongly suggests that Piland's car would have been struck by the stage, in view of the course it took, even had his car been turned to the right partially onto the level shoulder between the pavement and the ditch, and thus widened the space between the center line of the pavement and his car had it been so turned.

██ ██ Contention is made in behalf of appellants that the trial court erred in its rulings in receiving and excluding evidence tending to show the attitude of Piland towards Mrs. Piland during some three years prior to the entry of the interlocutory divorce order and the occurring of his death. This evidence and offered evidence, it seems to us, as it manifestly did to the trial court, is of very little, if any, consequence as a determining factor of the right of this case. The theory of the production and offering of this evidence seems to have been that it had a substantial bearing on the measure of loss to the wife and daughter caused by Piland's death.

The adjudication of Mrs. Piland's alimony rights in the interlocutory order of divorce seems to have been regarded by the trial judge as the most important consideration in measuring her loss by Piland's death. It seems equally plain that the loss to the daughter by reason of her nearing the age of majority and already possessing some earning power, was regarded by the trial judge as comparatively small. So, it is apparent that the trial judge considered but a comparatively

small part of the $7,000 award as being for the benefit of the daughter.

The record in the divorce action shows that Piland consented to the alimony portion of the interlocutory divorce order. It also rather clearly appears, in the light of his earning power and the length of his life expectancy, that he would have been, in all probability, able to meet that alimony obligation, or an equal marital obligation in case of a reconciliation, had he not lost his life in this accident.

At the time of Piland's death he was forty-seven years old, and Mrs. Piland was thirty-nine years old. So his life expectancy was approximately twenty-three years, and her life expectancy was, of course, longer. This can be judicially noticed. 41 C. J. 216; *Suell v. Jones,* 49 Wash. 582, 96 Pac. 4; *Bradley v. Seattle,* 160 Wash. 100, 294 Pac. 554; 1 Jones on Evidence (2d ed.), § 453; 3 Nichols Applied Evidence 3122. The fulfilling of that alimony obligation by Piland, even during his life expectancy, would amount to approximately $14,000, the present worth of which is more than the $7,000 damage award for the benefit of the widow and daughter in this case.

Some contention is made that the award of $578 for funeral and burial expenses of Piland is excessive. We deem it sufficient to say that we cannot so conclude in the light of the evidence.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, and MAIN, JJ., concur.

HOLCOMB, J. (dissenting)—The questions of negligence and contributory negligence were doubtless questions to be decided by the trier of the facts and it cannot be said that the evidence preponderates against the findings of the trial court.

But the award of damages to the surviving daughter and the divorced wife in the sum of $7,000.00, is entirely unwarranted by the law and facts here involved. Not only was the daughter almost at the age of majority, but under §§ 183 and 183-1, Rem. Comp. Stat., and the decision of this court in *Grant v. Libby, Mc-Neill & Libby*, 145 Wash. 31, 258 Pac. 842, she was in no sense a dependent.

The life expectancy of Mrs. Piland, noticed in the prevailing opinion, should have little effect in this case. The alimony agreement and award by the court in her divorce action of about fifty dollars per month, is payable during her life and "to cease in the event of her remarriage." She is now about forty years old and still of marriageable age. If she remarries within a year or two, as is quite possible, another man, unjustly, "will reap where he did not sow."

We try such a case as this *de novo* on the record.

The allowance for damages to the daughter, whatever it was, is wholly unfounded. The award to the divorced wife upon this record should not be sustained. Any award to her covering a period of more than five years, or $3,000.00, is grossly excessive, and is tantamount to illegal extortion from appellants. My view is that the judgment should be so modified.

To that extent, I dissent.