[Civ. No. 2390.   Fourth Appellate District.—July 31, 1940.]

CHARLES P. RICKARDS et al., Respondents, v. MILDRED NOONAN et al., Appellants.

Stickney & Stickney and Edward Strop for Appellants.

Hervey & Holt, Harden, Hervey & Holt and Henry F. Walker for Respondents.

GRIFFIN, J.—This is an appeal by defendants and appellants from a judgment awarding plaintiffs and respondents, as the sole surviving heirs at law of Stewart Rickards, deceased, damages for his wrongful death.

Appellants raise no question concerning their negligence or liability to respond in damages. ■ They contend (1) that the damage awarded is excessive; and (2) that the trial court erred in ruling upon the admissibility of certain evidence.

Respondent Doris Rickards was decedent's wife and respondent Charles P. Rickards was decedent's father. Trial was had before the court without a jury. It found that the respondents jointly had been damaged in the sum of $3,438.64, of which $146.50 was for funeral expenses.

One night about October 30, 1938, the deceased was riding with a Beleta Myers and certain other persons in a hay wagon used for hay ride excursions on a paved highway near El Cajon. A car owned by Mildred Noonan and being driven with her consent by Hale Whitaker ran into the rear of the hay wagon, resulting in the immediate death of Stewart Rickards.

Respondent Doris Rickards was married to decedent on April 16, 1933, about three years after her graduation from high school. They lived together as man and wife (except for a period of about three weeks) until May 9, 1938, a period of five years. They became separated on this latter date and on August 10, 1938, she procured an interlocutory decree of divorce. No provision was made in that decree for alimony or support.

From the evidence it appears that the divorce proceedings were instituted by respondent Doris Rickards for the apparent purpose of reforming decedent; that intermittently throughout their married life, decedent had gambled considerably; that respondent had attempted to break him of the habit; that she sought the divorce to teach him a lesson; that she still loved him and he still loved her and she brought the divorce proceedings as a last resort; that soon after the granting of the interlocutory decree the parties started to reconcile their marital difficulties and some time prior to his death they began to see each other "every other day or so"; that during the two weeks preceding his death they frequently met and had various engagements for lunches, dancing, playing games, and riding together. He frequently telephoned her. They discussed "going back together again". Sexual relations between them were had on the two nights preceding his death. Plaintiff testified that "subsequent to the granting of the interlocutory decree between us, there was a reconciliation between us", and although they had become reconciled, they had not as yet moved together again because decedent, who was living with his father, had many bills to pay and he "wanted to get on his feet first" so that their resumed married life would not again fail. On the last evening when Doris Rickards was in the company of the deceased, he borrowed $50 from her and gave her his note for $56. This note was in addition to a prior note for $500 which she testified he gave her for money loaned to him by her prior to their marriage,

and decedent had agreed to pay a community debt (grocery bill), a portion of which he had paid, the balance of which was $172. Respondent Doris Rickards had been employed during her married life and was self-supporting. Her husband, during the two summers preceding his death, had a seasonal job with a salary of $41 per week. At the time of his death he was employed in a steady position at a salary of $36 per week.

As to the respondent, the father, the evidence shows that he was partially dependent upon the deceased for his support during the married life of his son; that for several years previous to their separation, decedent and his wife had resided about one block from the father's home. In May of 1938, decedent moved into his father's home where he was staying at the time of his death. Charles P. Rickards testified that decedent "was paying me $12.50 a week to support me" and that such contribution started when decedent moved to the father's residence; that in addition to the foregoing contributions the decedent gave him other amounts which over a period of several months averaged $10 a month; that although he could not tell the average thereof prior to the five months preceding decedent's death, he testified that similar contributions had been made for several years previous thereto.

Respondent Doris Rickards testified that her husband had given his father sums varying from $10 to $20 and on two or three occasions had "helped his father out with large sums of money".

The trial court in its formal findings of fact and conclusions of law found that plaintiff Doris Rickards was the wife of deceased at the time of his death, and that although she had procured an interlocutory decree of divorce, she was not divorced from decedent. It was further found that by his death she had been deprived of the comfort, society, support and consortium of the decedent to her damage, which, combined with that suffered by her coplaintiff, amounted to $3,292.14.

Appellants on this appeal contend that respondent Doris Rickards suffered no substantial damage and, if entitled to anything, she was entitled only to nominal damages. It is conceded by appellants that she is a proper party plaintiff herein, that is, she is an heir at law within the meaning of the provisions of section 377 of the Code of Civil Procedure, but

that as such heir she is entitled to only nominal damages under the evidence.

In support of the first contention appellants argue that the evidence would not justify a finding or conclusion that the parties had effected a reconciliation and that therefore the respondent Doris Rickards had no legally enforceable right to support from the deceased, Stewart Rickards, and cite *McClure* v. *McClure*, 4 Cal. (2d) 356 [49 Pac. (2d) 584, 100 A. L. R. 1257], which in effect holds that where the interlocutory decree of divorce neither awards alimony to the wife nor reserves a right thereafter to make an allowance for her support, the husband is relieved of the obligation to pay alimony or support the wife. The case of *Powers* v. *Sutherland Auto Stage Co.*, 190 Cal. 487 [213 Pac. 494], is also cited, wherein it is said: "The amount awarded is solely attributable, therefore, to the loss by the death of the husband of the legally enforceable right of support against him." It is therefore maintained that when Doris Rickards procured the interlocutory decree of divorce against her husband she freed him from any legally enforceable obligation for support, and placed herself in the category of a collateral heir for the purposes of this action, and that the result of this action on her part is that she now has the burden of proving actual pecuniary loss, citing *Estate of Riccomi*, 185 Cal. 458 [197 Pac. 97, 14 A. L. R. 509], *London G. & A. Co.* v. *Industrial Acc. Com.*, 181 Cal. 460, 466 [184 Pac. 864], *Estate of Walker*, 176 Cal. 402, 413 [168 Pac. 689], *Zeller* v. *Reid*, 26 Cal. App. (2d) 421 [79 Pac. (2d) 449], *Dickinson* v. *Southern Pac. Co.*, 172 Cal. 727 [158 Pac. 183], and *Piland* v. *Yakima Motor Coach Co.*, 162 Wash. 456 [298 Pac. 419].

Respondents, in meeting this contention, assert that damages in a wrongful death action are based on the valuation of the benefits which the heirs probably would have received from the decedent had his life not been taken, and that in cases of this character, the damages sustained are largely of a prospective nature, citing *Valente* v. *Sierra Ry. Co.*, 158 Cal. 412, 419 [111 Pac. 95].

In *Taylor* v. *Albion Lumber Co.*, 176 Cal. 347, 351, 352 [168 Pac. 348, L. R. A. 1918B, 185], it was held that "The action given by section 377 of the Code of Civil Procedure is one for the benefit of 'heirs' . . . and lies, regardless of their condition as to dependency, for any pecuniary loss they

may suffer by reason of the death. . . . As said in *Sneed* v. *Marysville etc. Co.,* 149 Cal. [704] 710 [87 Pac. [376] 379] : 'This pecuniary loss may be either a loss arising from the deprivation of something to which such heirs would have been legally entitled if the person had lived, or a loss arising from a deprivation of benefits which, from all the circumstances of the particular case, it could be reasonably expected such heirs would have received from the deceased had his life not been taken, although the obligation resting on him to bestow such benefits on them may have been a moral obligation only'.''

In *Williams* v. *McDowell,* 32 Cal. App. (2d) 49 [89 Pac. (2d) 155], it was held that ''While recovery is limited to pecuniary loss this may be either a loss arising from the deprivation of something to which the heir would have been legally entitled, such as support, or it may arise from a loss of benefits which under the circumstances could reasonably be expected to have accrued to the heir even though the obligation resting upon the deceased to bestow such benefits may have been a moral obligation only.'' The case of *Morgan* v. *Southern Pac. Co.,* 95 Cal. 510, 521 [30 Pac. 603, 29 Am. St. Rep. 143, 17 L. R. A. 71], is also cited.

Appellants throughout their brief quote and rely upon certain statements made by the trial court in his oral opinion. They have predicated much of their argument thereon and thereunder have attempted to divide the lump-sum judgment into two distinct portions, one of which they attempt to allocate to the respondent widow and the other to the respondent father. The formal findings and judgment make no such division. ■ A single lump-sum finding on damages suffered by the heirs and a single lump-sum judgment is the only proper method of assessing damages and whether it is divided among them after recovery or not, or how it is divided, are matters of no concern to the appellants. (*Robinson* v. *Western States Gas etc. Co.,* 184 Cal. 401 [194 Pac. 39].)

■ The general rule is that the written opinion of the trial court is no part of the record on appeal and will not be considered by this court for the purpose of predicating error in the rulings of the trial court or in determining whether the findings of fact are supported by the evidence. (*Luman* v. *Golden Ancient Channel M. Co.,* 140 Cal. 700, 704 [74 Pac. 307] ; *DeCou* v. *Howell,* 190 Cal. 741, 751 [214 Pac. 444] ; *Cohen* v. *Metropolitan Life Ins. Co.,* 32 Cal. App. (2d) 337

[89 Pac. (2d) 732]; *Toby* v. *Hubbard*, 125 Cal. App. 261 [13 Pac. (2d) 869]; *Heinfelt* v. *Arth*, 4 Cal. App. (2d) 381 [41 Pac. (2d) 191]; *Sassano* v. *Roullard*, 27 Cal. App. (2d) 372 [81 Pac. (2d) 213]; *El Centro Grain Co.* v. *Bank of Italy, etc.*, 123 Cal. App. 564 [11 Pac. (2d) 650].)

However, there is another line of decisions which hold that the opinion of the trial judge may be considered for the purpose of considering the process by which he arrived at his conclusions, or when the opinion furnishes the basis of the court's decision of the case. (*Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal. (2d) 740 [47 Pac. (2d) 273].) The trial judge, in discussing the question of damages, made certain remarks which were not basically well chosen concerning the probabilities of the claimed reconciliation being of a permanent character, or relating to the possibilities of a complete reconciliation. The remarks were:

"I think I am entitled to consider what are the reasonable probabilities of reconciliation during the one year that there was not a divorce, but simply an interlocutory decree, and from all the evidence in the case it would be my guess that there is about one chance out of four of there actually being a reconciliation which would stand. . . . It is my belief that he would eventually have paid the grocery bill. . . . As far as the notes are concerned, it is my belief that if there was never a reconciliation and he got around to it and had a lot of money that he didn't have any use for somewhere else, and did not gamble, he would have paid them. If he became reconciled, he never would. . . . Again, I think she had about one chance out of four of ever recovering on those notes. . . . I think that it would be fair to allow her about one-fourth as much as I would if there had been no interlocutory decree and they had been living together. . . . I would feel probably that his comfort and protection and society, etc., measured in dollars and cents, was about the same to her as it was to his own father, . . . I think I will allow her $1,500 for that."

The item of $146.50 for the funeral bill was indicated as an additional item to be added to the father's share and an additional amount of $192 was likewise suggested as an item of allowance to the wife. The court then held that the judgment of the plaintiffs on the death case would be $3,338.50.

Before denying the motion for new trial the court reconsidered the remarks above made and stated:

"Defendants' construction of the remarks made by the court in deciding this case, while perhaps logical, does not set forth the real intention of the court. It was my feeling at the time, and is my present feeling, that the evidence strongly preponderates to the effect that a reconciliation would have been accomplished. The probability of a reconciliation was and is established in my mind by clear, satisfactory, and convincing evidence. However, I felt that even though the probability was clearly established yet it might not work out in more than one out of four cases. What was said by the Court was, of course, not a finding of fact but a discussion from the bench, trying to explain to counsel the operations of the Court's mind as to how it arrived in dollars and cents at the value of the intangible elements which are compensable under the death statute.

"The final result and ultimate facts determined were and are that the plaintiff Doris Rickards was damaged by the death of her husband and that for that damage plaintiffs are entitled to a judgment in the amount set forth in the judgment. The court is of the opinion that the plaintiffs are entitled to recover judgment as a matter of fact and law, all as set forth in the findings and judgment, and that the evidence bearing thereon was established in favor of plaintiffs by a clear preponderance and by clear, satisfactory and convincing evidence."

In view of the determination made on the motion for new trial, we feel bound by the general rule first above mentioned. If the judgment or order in question is right upon any theory of law applicable to the case it must be sustained, regardless of the considerations which may have moved the trial court to its conclusion. It is judicial action and not judicial reasoning which is the subject of review. (*Luman* v. *Golden Ancient Channel M. Co., supra;* 2 Cal. Jur. 476.)

In the instant case there are several theories upon which the judgment of the trial court may have been predicated: (1) That the plaintiff wife suffered all of the damages awarded upon the theory that a reconciliation with reasonable certainty would have been accomplished and she was deprived of future benefits which would have accrued to her; (2) that a reconciliation had taken place and she was damaged by the deprivation of future benefits and rights; (3) that the plaintiff father suffered all of the general damages awarded; and (4) that the

274

plaintiffs each suffered substantial damages which combined amounted to the award made.

One of the great purposes of the law enforcing a year's delay between the interlocutory and final decrees of divorce is to provide a period during which the parties may become reconciled and thus avoid the unhappy consequence of a final decree of divorce. (*McGuinness* v. *Superior Court*, 196 Cal. 222 [237 Pac. 42, 40 A. L. R. 1110].) It is within the contemplation of the law that facts arising subsequent to the entry of the interlocutory decree should have their influence in determining the right to a final decree, and the courts inherently possess under the present statute and without express authorization, the power to recognize condonations and reconciliations and to do justice as may be demanded by such events as have arisen subsequent to the interlocutory decree and before the expiration of the fixed period of one year. It has been declared that one of the important purposes of the law is to give the spouses a chance to effect a reconciliation, which the law always favors. (*Olson* v. *Superior Court*, 175 Cal. 250 [165 Pac. 706, 1 A. L. R. 1589].) ■ Reconciliation is to a great extent dependent upon the intention of the parties. The existence of such intention in the instant case is supported by evidence. Their frequent meetings and friendly companionship, their decision to reunite, their indulgence in sexual intercourse, their desire to move together as soon as their financial condition would permit, and the testimony that they had become reconciled, could result in a conclusion that a reconciliation had taken place. (*Gregg* v. *Manufacturers Bldg. Corp.*, 134 Cal. App. 147 [25 Pac. (2d) 1014]; *Estate of Walker*, 176 Cal. 402, 413 [168 Pac. 689].)

■ Although the evidence does not disclose the age of the father, the trial court remarked, after seeing the witness on the stand, that in this regard he used his own judgment and considered his personal experience and to him he appeared to be a little older than 53 years. It has been held, under such circumstances, that a trier of facts may approximate the witness's age and life expectancy. (*Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699 [28 Pac. (2d) 919]; *Hill* v. *New York Life Ins. Co.*, 38 Cal. App. (2d) 627 [101 Pac. (2d) 752]; *Duehren* v. *Stewart*, 39 Cal. App. (2d) 201 [102 Pac. (2d) 784].)

Applying the rules applicable in reference to pecuniary loss under section 377 of the Code of Civil Procedure (8 Cal. Jur., secs. 51, 52, 53, pp. 1003–1007), and for the reasons expressed, we are unable to hold that the award was unreasonable and not supported by the evidence.

■ The sole remaining contention made by appellants relates to the rulings made on the admissibility of certain evidence. All of this evidence related to one subject, i. e., an attempt by appellants to introduce testimony through Miss Beleta Myers of conversations had between her and the decedent respecting marriage. Miss Myers testified that she was not engaged to the decedent. On cross-examination Doris Rickards testified that decedent had never told her that he and Miss Myers were engaged to be married. An unsuccessful attempt was made by appellants on two different occasions to introduce purported conversations between Miss Myers and the decedent on that subject. Regardless of the correctness of the court's ruling, appellants are in no position to urge error in regard to any of the foregoing. Respondents, toward the close of the trial, withdrew their objections to the introduction in evidence of certain testimony set forth in a deposition wherein Miss Myers stated that there had been a conversation in reference to their marital intentions, and this portion of the deposition was received in evidence. The court thereafter remarked to appellants' counsel: "If you want to get further evidence from her on that, I will permit you. . . . By Mr. Stickney: If I desire to, I will request Your Honor. I don't know that I will." No further request or offer of proof was thereafter made. Error cannot be predicated upon the court's previous ruling. (*McDonald* v. *Morley,* 15 Cal. (2d) 409, 412 [101 Pac. (2d) 690].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 19, 1940.