[Civ. No. 8088. Third Dist. Aug. 14, 1952.]

WILLIAM G. HAY et al., Appellants, v. DELMER E. ALLEN et al., Respondents.

Spurr & Brunner for Appellants.

Kasch & Cook for Respondents.

PEEK, J.—This is an appeal from an adverse judgment rendered in a quiet title action instituted by plaintiffs.

The situation out of which this litigation grew is as follows. In September, 1939, one V. H. Warnock became the owner of certan lands in Mendocino County known as the Craig Ranch consisting of the N.E.¼ of the S.W.¼, and the N.W.¼ of the S.E.¼ of section 34, T. 12 N., R. 16 W., M.D.M., except that portion of the N.W.¼ of the S.E.¼ lying to the north of a county road known as the Iverson Landing Road, which runs from the northwest corner to the southeast corner of said section, roughly bisecting it.

On September 11, 1939, Warnock and his wife executed a deed of trust on all of the land to the California Pacific Title and Trust Company, as trustee, to secure payment of a $1,312.38 note payable in six months after date. The note became due on March 11, 1940. No payments were ever made thereon.

Subsequently on March 11, 1940, Warnock sold to one Samuels a 10-acre tract of said property. This tract, rectangle in shape, was to the south of and bordered on the Iverson Road. On the same day the trustee executed a partial release to said 10 acres. On August 27, 1940, by an instrument in writing, Warnock agreed to sell "20 acres, more or less" to Mr. and Mrs. Thompson, defendants' predecessors. No description other than the designated acreage was set forth in said agreement. However, the boundaries of the tract were pointed out to the Thompsons as being the Iverson Landing Road on the north, the Samuels property on the west and the southerly boundary of the northwest one-quarter on the south. Under the terms of said agreement of sale the property was to be surveyed and a description provided. Upon making this contract the Thompsons entered into possession of the property so described and immediately commenced construction of the house now contended to be upon plaintiffs' property. In addition they cut

and cleared the brush and trees to a distance of 50 feet to the west of the house and built a driveway to the Iverson Landing Road. On May 20, 1941, and it is to be noted subsequently to the completion of the house, Warnock executed a deed to the Thompsons which deed described the land conveyed as being:

"All that portion of the east half of the northwest quarter of the southeast quarter of Section 34, Township 12 North, Range 16 West, M.D.M. lying south of the Iverson Landing Yorkville Road, containing 20 acres more or less."

This description, due to a mistake of the surveyor, did not fully describe the property pointed out to the Thompsons and in particular the westerly portion thereof on which the house and other improvements were located. Only the most easterly 5 or 6 acres of the area was described, thereby omitting the portion on which the house was situated.

On June 9, 1941, the trustee, using the same description, executed a release from the deed of trust of the property so conveyed. Warnock testified that the area described by said description was intended to cover the area he had previously pointed out to the Thompsons, and that the area, so pointed out, was believed by him to be all of his remaining property east of the Samuels tract. The evidence relating to Warnock's agreement with the trustee, concerning the partial release, was to the effect that no money was to be paid the trustee or beneficiary for the release "Because at that time I was building a cabin on down below, and we figured one would offset the value of the other."

On March 24, 1942, the Thompsons sold the property to the defendants herein, the Allens, who made further improvements and cleared the area west of the house to a distance of 100 feet.

On April 21, 1942, the trustee, to satisfy the defaulted note, sold the remaining property to Mr. and Mrs. Childress. The description was the same as that originally set forth in the deed from Craig to Warnock but with exceptions as to the property contained in the deeds to Samuels and the Thompsons. The Childresses, on May 21, 1942, conveyed to one Boonstra who, on September 23, 1943, using the same description, conveyed the same to plaintiffs and appellants herein. None of these parties, including plaintiffs, believed they were purchasing any of the property now in dispute.

Taxes were assessed on the basis of the deed description,

and an assessment for improvements was made. Payments in accordance with the assessments were made for five years, from 1942 to 1946 inclusive, first by the Thompsons and then by the Allens. The east half, south of the road, was unimproved, the only improvement on the entire area being the house here involved.

The trial court found that the Allens and their predecessors had complied with the requisites necessary to acquire title by adverse possession as to a portion of the land (later to be described) and awarded judgment for defendants in accordance with their cross-complaint. The court also found that plaintiffs were barred from maintaining their action by the provisions of Code of Civil Procedure, section 318.

■ Appellants first contend the description of the land awarded by the judgment is indefinite and therefore the judgment must be reversed.

The relevant portion of the description contended to be void reads as follows:

"Commencing at a point where a 3 x 3 redwood stake is set, which said stake is on the Southerly line of the said Northwest Quarter of the Southeast Quarter of said Section 34, midway between the Easterly and Westerly halves of said Northwest Quarter of the Southeast Quarter of said Section 34, . . .

"Thence from said point of beginning running in a Northwesterly direction to a point 50 feet West of the most Westerly point of a certain dwelling known as the Delmer E. Allen home.

"Thence in a Northeasterly direction to a point where a 3 x 3 redwood stake is set in the fenceline on the South boundary of the County Road, known as the Iversens Landing Road, which said point is North 00° 53′ 30″ East, 625.97 feet from the point of beginning; and thence running in a direct line to the point of beginning.

"Intending hereby to describe a tract of land triangular in shape, upon which the aforesaid Allen dwelling is located. . . ."

We are unable to agree with appellants in this contention. The location of the house is of course definite, as is its most westerly point. The description specifies the western apex of the triangle to be 50 feet west of the most westerly point of the house. Appellants' argument that the point so specified by this direction could be anywhere on the line marking that longitude is not convincing. The words used

must be given a common sense interpretation. We think a reading of the description shows that "west" as there used meant "due west." It was not necessary to actually use the word "due" to sufficiently indicate the direction. The most northerly corner of the triangle is marked by a 3 x 3 redwood stake set on the south boundary of the Iverson Landing Road. The point of beginning, the most southerly corner of the triangle, can be located by a 3 x 3 redwood stake as well as by computation of the angle and distance from the stake set in the south boundary of the road. While the description may not be all the appellants desire it to be, it is legally sufficient since all three corners of the triangle can be located with certainty. (See *Newport* v. *Hatton,* 195 Cal. 132, 156 [231 P. 987].)

Appellants' remaining contentions are addressed to a demonstration that the judgment cannot stand on the theory on which it was rendered, to wit, that respondents by virtue of adverse possession are entitled to the property awarded.

The judgment of a trial court "must be affirmed if the findings, supported by the evidence, are sufficient to warrant the relief granted on any legal theory." (*Sears* v. *Rule,* 27 Cal.2d 131, 140 [163 P.2d 443] ; see, also, *Estate of Raphael,* 91 Cal.App.2d 931, 940 [206 P.2d 391] ; *Heck* v. *Heck,* 63 Cal.App.2d 470, 475 [147 P.2d 110] ; *Rickards* v. *Noonan,* 40 Cal.App.2d 266, 273 [104 P.2d 839] ; 2 Cal.Jur. 476.)

It is a further and well settled corollary rule that an appellate court must make every intendment in favor of the judgment and erroneous conclusions of law and unsupported or erroneous findings of fact will be disregarded as being harmless error if the judgment as rendered can be sustained on the supported and proper findings made by the trial court. (*Arnold* v. *Arnold,* 76 Cal.App.2d 877, 880 [174 P.2d 674] ; *Lange* v. *Waters,* 156 Cal. 142 [103 P. 889, 19 Ann.Cas. 1207] ; 2 Cal.Jur. 1028.)

Since it is our conclusion that the judgment, as rendered, can be affirmed on theories other than adverse possession it becomes unnecessary to discuss appellants' other contentions, all of which are addressed to a consideration of the applicability of that theory.

It is the statute rule in the state that the primary object of interpretation is to give effect to the mutual intention of the parties as it existed at the time of the agreement. (Civ. Code, § 1636.) It is also the rule that "a contract shall be interpreted most strongly against the party who caused

the uncertainty to exist.'' (Civ. Code, § 1654.) ■ It is the further rule that it is the duty of the court to assume the positions of the parties and to consider the circumstances surrounding the execution of the conveyance and therefrom, if possible, gain the true intent of the parties. (Code Civ. Proc., § 1860; *Marlin* v. *Robinson,* 123 Cal.App. 373 [11 P.2d 70].) ■ And in so determining the intent of the parties a court may look to the acts of the parties thereunder and to the practical construction placed upon it by them. (*Jones* v. *Wilterding,* 100 Cal.App.2d 210 [223 P.2d 91].)

■ Viewing the evidence in light of rules as stated it is obvious that Warnock intended to sell all of the property owned by him lying east of the Samuels tract and that the boundaries he pointed out to the Thompsons were in conformity with this intention. The property is mountain property and at the time of the Thompsons' agreement no accurate description of the parcel was available. Consonant with these circumstances it was agreed the Thompsons should take possession and that subsequently, when an accurate description was available, a deed would be executed in accordance therewith and delivered to them. The Thompsons entered into possession, and within the boundaries of the property as pointed out to them, built a house and roadway to the Iverson Landing Road. Warnock hired an unlicensed surveyor to ascertain a proper description of the parcel for the deed. However, the description as platted by him was erroneous and did not include the property upon which the house was situated. The trustee had agreed with Warnock to release the property conveyed from the deed of trust. It was contemplated by Warnock and the trustee that the value of the property released would be offset by the value of a building Warnock was erecting on another part of the property. The erroneous description was provided the trustee and it without question executed its release on the basis of the description as provided and in accordance with said agreement. Lastly the court found that all of the parties, including the plaintiffs, at the time they purchased their interest, believed all of the land east of the Samuels tract was owned by the Thompsons and their successors, the Allens.

Thus the evidence conclusively shows that Warnock believed the description in question covered the property as pointed out to the Thompsons that the trustee had agreed to release whatever property was sold by Warnock and that the Thompsons, as well as all other interested parties, be-

lieved they (the Thompsons) were the owners of all of the erroneously-described 20 acres. Hence, by applying the principles of interpretation above enunciated to the undisputed facts it necessarily follows that the trustee's release must be interpreted as covering the property pointed out to the Thompsons by Warnock.

However, even if the above interpretation of the contract be incorrect, appellants' claim would still be without merit since under the facts as shown by the record they are estopped from asserting a claim to the land in question.

It is the well established rule that "the owner of land is presumed to know the boundaries and area of his land, and a purchaser thereof from him is warranted in relying upon the owner's representations as to the boundaries, whether designated by acres or dimensions; and if his representations concerning same are false, they operate as a fraud in law upon the purchaser. . . . So where the declarations of the grantor in relation to his boundary lines controlled the grantee in the purchase of the land, the grantor, and those claiming under him are estopped to assert any boundary in opposition to the lines claimed by the grantee." (4 Cal.Jur. p. 440.)

Under this rule, if the contesting parties here were the grantor Warnock, and the Allens, the successors of his grantees, the grantor would be estopped to assert any boundary in opposition to that pointed out by him and which parcel all parties thought was truly described by the description of the deed.

However, here the contest is not between the grantor and his grantees or their successors. The plaintiffs (the Hays) are purchasers from the trustee, under a deed of trust which was placed on the property prior to the sale here involved.

Ordinarily the purchasers from a trustee under such circumstances would be asserting an independent title and would not be subject to any estoppel which could be asserted against the grantor-trustor. However, an estoppel operates not only on the parties to a transaction but also their privies including those who are privy by reason of contract. (10 Cal.Jur. 652.)

Here the trustee is shown to have agreed to, and in fact did, release the property so sold by Warnock. By virtue of the contract the trustee was placed in privity with Warnock and since plaintiffs are the successors of the trustee

they also are in privity with Warnock and hence are estopped from asserting a boundary different from that pointed out by him to the Thompsons.

The judgment is affirmed.

Van Dyke, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied September 13, 1952, and appellants' petition for a hearing by the Supreme Court was denied October 9, 1952.